## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:  ) | **Chapter 7** |
| ) | **Case No. 03-11489 (KG)** |
| **PLASSEIN INTERNATIONAL CORP., et al.,**  ) | |
| ) | **Jointly Administered** |
| Debtors.  ) | |
| ) | |
| **WILLIAM BRANDT, AS HE IS THE**  ) | |
| **TRUSTEE OF THE ESTATES OF**  ) | |
| **PLASSEIN INTERNATIONAL CORP.,**  ) | |
| **et al.,**  ) | **Adv. Pro. No. 05-50692 (KG)** |
| Plaintiff,  ) | **BAP 07-62** |
| ) | |
| v.  ) | |
| ) | |
| **B.A. CAPITAL COMPANY LP, et al.,**  ) | |
| ) | |
| Defendants.  ) | |

## DESIGNATION OF ADDITIONAL ITEMS FOR RECORD ON APPEAL

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, B.A. Capital Company LP, as appellee, hereby submits the following designation of an additional item to be included in the record in connection with the appeal of the above-captioned adversary proceeding:

1.    Transcript of oral argument held on April 12, 2007 before the United States Bankruptcy Court for the District of Delaware [to be docketed].

RLF1-3151828-4

Dated: May 17, 2007
      Wilmington, Delaware

_____
Robert J. Stearn, Jr. (No. 2915)
Michael J. Merchant (No. 3854)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware, 19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Karen E. Wagner
Elliott Moskowitz
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-3800

Attorneys for B.A. Capital Company L.P.

2

1

1

2  UNITED STATES BANKRUPTCY COURT

3  DELAWARE DISTRICT OF DELAWARE

4  Case No. 03-11489

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  PLASSEIN INTERNATIONAL CORP., ET. AL.,

9

10       Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              844 King Street

16              Wilmington, Delaware

17

18              April 12, 2007

19              3:00 PM

20

21  B E F O R E:

22  HON. KEVIN GROSS

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2  **HEARING re:  Motion to Dismiss Adversary Proceeding against**

3  **William A. Brandt, Trustee of the Estates of Plassein**

4  **International Corp.**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  **Transcribed by:  Hana Copperman**

25

3

1

2   A P P E A R A N C E S :

3   HANIFY AND KING, P.C.

4        Attorneys for William A. Brandt, Chapter 7 Trustee

5        Professional Corporation

6        One Beacon Street

7        Boston, MA 02108

8   BY:   CHARLES R. BENNETT, JR., ESQ. (TELEPHONICALLY)

9

10   RICHARDS, LAYTON AND FINGER, P.A.

11        Attorneys for BA Capital Company

12        One Rodney Square

13        920 North King Street

14        Wilmington, DE 19801

15

16   BY:   ROBERT J. STEARN, JR., ESQ.

17

18   DAVIS, POLK AND WARDWELL

19        Attorneys for BA Capital Company

20        450 Lexington Avenue

21        New York, NY 10017

22

23   BY:   KAREN E. WAGNER, ESQ.

24

25

4

1

2  CROSS AND SIMON, LLC

3      Attorneys for William A. Brandt, Chapter 7 Trustee

4      913 North Market Street

5      P.O. Box 1380

6      Wilmington, DE 19899-1380

7

8  BY:  AMY EVANS, ESQ.

9

10 ASHBY AND GEDDES

11     Attorneys for Certain Rex shareholders and Sam Chebeir

12     500 Delaware Avenue

13     P.O. Box 1150

14     Wilmington, DE 19899

15 BY:  RICARDO PALACIO, ESQ.

16

17 POTTER, ANDERSON and CORROON, LLP

18     Attorneys for Key Packaging Defendants

19     Hercules Plaza

20     1313 North Market Street

21     P.O. Box 551

22     Wilmington, DE 19899

23

24 BY:  DAVID J. BALDWIN, ESQ.

25

5

1

2   SARNA AND ASSOCIATES, P.C.

3       Attorneys for Defendant, Marshall Plastic Film

4       888 Seventh Avenue

5       New York, NY 10106

6

7   BY:   JAMES A. SARNA, ESQ.

8

9   WILMER, CUTLER, PICKERING, HALE AND DORR, LLP

10      Attorneys for Key Packaging defendants

11      60 State Street

12      Boston, MA 02109

13

14  BY:   RICHARD JOHNSTON, ESQ.

15

16

17

18

19

20

21

22

23

24

25

6

**P R O C E E D I N G S**

1

2          THE COURT:  Good afternoon, counsel.  You may be

3    seated.  Welcome.  I think, besides counsel in the courtroom,

4    Mr. Bennett is on the telephone.  Is that correct?

5          MR. BENNETT:  That's correct, Your Honor.  Thank you

6    for accommodating me.

7          THE COURT:  Certainly.  And I begin with a little bit

8    of an explanation and an apology, because clearly this case

9    should have been decided long ago.  And you were all here

10   months before on oral argument in the matter.  And it was a

11   long time ago.  And Judge Shapiro -- who's a visiting Judge --

12   and just so you understand I kept asking where he was in his

13   decision.  And he kept deferring me that he was working on

14   the -- with the issue shortly.  And I received that assurance

15   several times.  And finally I decided that it just -- I just

16   had to set it down for oral argument.  And I advised him and

17   explained to him that if he were to issue an opinion, then

18   obviously oral argument could be cancelled.  He told me to

19   continue to work on the case, and no opinion has been

20   forthcoming, so here we are.  And I -- again, I do apologize.

21   I was a roaming Judge in those days, and I think I was

22   extremely deferential to even a visiting Judge who had really

23   given a lot of his time and effort for our benefit.  And we

24   were appreciative of that.  And also he was, you know, an

25   experienced judge, but I wish he could have done things a

7

1   little bit sooner, and here we are today.  And I assure you

2   that you'll get a decision quickly in this case.  So with that,

3   why don't we begin?  Mr. Stearn, good afternoon.

4          MR. STEARN:  Good afternoon, Your Honor.  Good to see

5   you again.

6          THE COURT:  Good to see you.  Thank you.

7          MR. STEARN:  May it please the Court, for the record,

8   Bob Stearn from Richards, Layton and Finger, here on behalf of

9   defendant BA Capital Company, Your Honor.  As you know, there's

10  a single matter on the docket today.  It's the motion to

11  dismiss -- motions to dismiss, --

12         THE COURT:  Yes.

13         MR. STEARN:  -- by various defendants, in the

14  adversary number 05-50692.  As Your Honor knows there's

15  multiple defendants who read Otto Reeves.  We have, as you see,

16  many similar arguments in our briefs, so what we've decided to

17  do, in an effort to avoid repetition, perhaps be more

18  efficient, is we're going to divide the arguments up amongst

19  counsel, Your Honor, and although there may be some inevitable

20  duplication, we're going to do our best to avoid that.  In

21  essence we're going below -- for example, BA Capital will not

22  make every argument in its brief today.  We'll be relying, to

23  some extent, on the arguments of our counsel or our

24  codefendants, and also on our briefs --

25         THE COURT:  Yes.

8

1          MR. STEARN: -- for the arguments that we don't make

2     today.  And that's true of every defendant.

3          THE COURT:  The briefs were very good.  And we read

4     them very carefully in the cases, so I think we are extremely

5     well prepared for the argument.

6          MR. STEARN:  Thank you, Your Honor.  I'd like to

7     start by introducing my co-counsel, Ms. Karen Wagner, of Davis

8     Polk.

9          THE COURT:  Welcome, Ms. Wagner.  It's good to have

10    you.

11         MS. WAGNER:  Thanks.

12         MR. STEARN:  Ms. Wagner will present an argument

13    today on behalf of BA Capital.

14         THE COURT:  Yes.

15         MR. STEARN:  And I think at this point I should turn

16    the podium over to some of my friends so they can make their

17    introductions as well.

18         THE COURT:  Thank you.

19         MR. STEARN:  Thank you.

20         THE COURT:  Thank you, Mr. Stearn.  Good to see you.

21    Mr. Baldwin.  Good afternoon.

22         MR. BALDWIN:  Good afternoon, Your Honor.  David

23    Baldwin of Potter, Anderson and Corroon.  I represent what

24    we've described as the Key Packaging defendants.  With me is

25    co-counsel who's been admitted pro hac vice, Mr. Richard

9

```
1    Johnston of --
2              THE COURT:  Welcome to you.
3              MR. JOHNSTON:   Thank you, Your Honor.
4              MR. BALDWIN:   Thank you, Your Honor.
5              THE COURT:  Thank you, Mr. Baldwin.
6              MR. SARNA:  Good morning, Your Honor.  Good
7    afternoon.
8              THE COURT:  Good afternoon.  Yes.
9              MR. SARNA:  Jacob Sarna of Sarna and Associates, P.C.
10   representing the Marshall Plastic Film defendant.
11             THE COURT:  Thank you.  Welcome to you too, of
12   course.  Mr. Palacio?
13             MR. PALACIO:  Good afternoon, Your Honor.
14             THE COURT:  Are you the newest partner in the
15   courtroom, I guess?
16             MR. PALACIO:  Thank you, Your Honor.  I appreciate
17   that.
18             THE COURT:  Congratulations.
19             MR. PALACIO:  Thank you very much.  I do appreciate
20   that, indeed.  For the record, part of the law firm of Ashby
21   and Geddes of behalf of what I'll call certain Rex shareholders
22   as well as Sam Chebeir.  Thank you, Your Honor.
23             THE COURT:  Thank you.  Ms. Wagner, are you going to
24   begin?
25             MS. WAGNER:  I will.  Thank you very much.
```

10

1          THE COURT:  Thank you.

2          MS. WAGNER:  Your Honor, as you have heard I will be

3    addressing the question of Section 546(e) of the bankruptcy

4    code.

5          THE COURT:  Yes.

6          MS. WAGNER:  Your Honor, I know you have read all the

7    briefs carefully.  I will quickly try to summarize what's in

8    the complaint, and then summarize my argument.  And if at some

9    point you think I'm telling you more than you need to know,

10   just tell me to move on.

11         THE COURT:  It's really my style to kind of let

12   counsel argue and ask questions if I have any particular

13   questions and not to argue with counsel.  They are here with a

14   plan.  I just decide.

15         MS. WAGNER:  All right.  Well that's certainly a fine

16   role for you, Your Honor.  Your Honor, as you know from reading

17   the complaint, in January of 2000 the company called Plassein

18   Packaging Corporation acquired some other companies, also in

19   the packaging industry, and in August, 2000 acquired yet

20   another one.  The complaint, by the trustee in this case,

21   alleges that although the company operated for about three

22   years after that time, that those transactions were fraudulent

23   conveyances, constructive fraudulent conveyances.  There's no

24   claim here of intentional fraud.

25         THE COURT:  All right.

11

1          MS. WAGNER:  And it seeks to avoid the transactions

2    pursuant to which the stock of these corporations was acquired

3    by Plassein.  There's no dispute here, Your Honor, that each of

4    these transactions occurred by virtue of a wire transfer

5    pursuant to which funds were transferred from the acquiring

6    corporation through a financial institution, Fleet Bank, to the

7    selling shareholders.  And in some cases the funds were

8    transferred to another financial institution for the selling

9    shareholder and then, for example, in the Bank of America

10   Capital Corp. company case the funds came from Fleet Bank, went

11   to Bank of America for the account of Bank of America Capital

12   Corporation.  There were two financial institutions involved.

13          THE COURT:  But I assume it would be your position

14   that it wouldn't matter if there were just Fleet --

15          MS. WAGNER:  Certainly not.

16          THE COURT: -- for purposes of your position.

17          MS. WAGNER:  If there's any financial institution

18   involved, we would argue, certainly, that 546(e) applies to

19   block any claim for fraudulent conveyance.  Now, indeed, Your

20   Honor, as you know from reading our briefs, it is our position

21   that this Court is bound by the decision of Resorts

22   International in the Third Circuit in which the Third Circuit

23   took an extremely literal view of the application of Section

24   546(e).  In that case there was a holder of stock of a public

25   company who inadvertently tendered stock for transfer, and was

12

1    paid, and later on the issuer, Resorts, filed for bankruptcy

2    and sought to recover the payment as an avoidable transfer.

3    The Court of Appeals began its decision by saying we mean every

4    statutory interpretation by looking to the claim language of

5    the statute.  When the statute is clear, when the language is

6    clear, no further inquiry is necessary unless applying the

7    blind language leads to an absurd result.  The Court went on to

8    note that the definition of settlement payment, which is the

9    kind of transaction that is protected under Section 546(e), is

10   extremely broad.  And said, in the securities industry a

11   settlement payment is generally the transfer of cash or

12   securities made to complete a securities transaction.  That is,

13   of course, what happened here, Your Honor.

14          The Court found that even though there was no

15   institution involved in that case from the clearing system, no

16   stockbroker, that was not relevant to its analysis.  The Court

17   said that under a literal reading of Section 546 this was a

18   settlement payment made by a financial institution, and held

19   that since there was no absurd result from that literal

20   application of the statute the Court was bound to apply the

21   statute and held that the transaction was protected from

22   avoidance.  And we certainly argue, Your Honor, that here as

23   Yourtz decrees that the transfers here must be protected from

24   avoidance.  Now the trustee argued a number of things a while

25   ago.  Some of which, of course, we responded to, most of them

13

 1    in our brief.  One of them is that Section 546(e) should only

 2    apply to the securities industry clearance and settlement

 3    system.  Your Honor, that argument was expressly rejected by

 4    the third circuit in the Resorts case, which said that if a

 5    financial institution is involved that is sufficient.  It is

 6    not necessary that a stockbroker be involved.

 7            The next argument, which is really a restatement of

 8    that one, is that you must read into the definition of

 9    settlement payment.  Some requirement that the payment actually

10    be made for the purchase of publicly traded securities.  And

11    again, Your Honor, that is not something that is written in the

12    statute, and the Third Circuit's Resorts' decision would

13    suggest you are not intended to read extraneous language into

14    that decision.  And indeed, Resorts rejected similar arguments

15    that had been made.  And holdings, in fact, by other courts, as

16    on versus Yucaipa Capital and the

17            THE COURT:  Wieboldt.

18            MS. WAGNER:  Wieboldt case.  And they rejected those

19    arguments, so again, I think those arguments are out of this

20    case.

21            Thereafter, after the Third Circuit's decision, and

22    before our argument last time, the Hechinger company case,

23    which is cited in our briefs also found that the decision in

24    Resorts was extremely broad, and if a financial institution was

25    involved then the transfer of funds or securities was immune

14

1    from avoidance.  At the time of the briefing last time, there

2    was only one case that had addressed the question of whether

3    securities of a privately held entity would also be entitled to

4    this protection, and that was the Loranger case, which held

5    that 546(e) was applicable.  And that the trustee's brief

6    forced an issue with that case.  But since the time of the

7    disbriefing in that case there have been a number of other

8    decisions which have held the same thing.  One of them is the

9    IT Group case, which was decided by Judge Walrath.  In this

10   district, who held that Section 546(e) applies even though, and

11   I quote, "the case does not involve a leveraged buyout,

12   publicly traded stock, or a clearing agency".  She too felt

13   bound by the literal application of the Resorts' decision to

14   apply 546(e) to a transfer of funds for stock of privately held

15   enterprise.  And that case was very similar to the one here in

16   that one entity was buying stock of another company.  Then

17   there was the National Forge decision which was in the Western

18   District of Pennsylvania, which was a -- again, a privately

19   held company's securities case.  It was the redemption of

20   certain securities in connection with the creation of an ESOP.

21   And there the Court went at great length into all the decisions

22   having to do with this issue, with the application of 546(e)

23   generally to albios or other transactions, private, public,

24   everything.  And that Court, too, concluded after a very

25   lengthy analysis that the Resorts decision was literal and had

15

1    to be applied, and it should be applied, and would be applied

2    in that case.  Other districts, too, have reached the same

3    conclusion.  The Quality Stores case, which we've also provided

4    to the Court, which is the same thing conclusion -- it is not

5    bound by Resorts -- but that Court is not bound by Resorts but

6    certainly felt compelled to follow the reasoning and the logic

7    in the Resorts' decision.

8            Finally, the trustee argues if you find 546(e)

9    ambiguous, you should look to legislative history, and has a

10   long discussion of legislative history and capital markets

11   issues.  Your Honor, I think that the decision on Resorts would

12   tell you that 546(e) is not ambiguous.  There is no reason to

13   go back to the legislative history or to decisions of other

14   Courts or anywhere.  It's very clear on its face what it means.

15   Many Courts have now held it.  It's very clear what it means.

16   And therefore, I think as the Hechinger Court noted, the courts

17   of this district are not free to disregard the controlling law

18   of the circuit.  The controlling law of the circuit is the

19   Resorts case and, Your Honor, we respectfully suggest that that

20   applies here, and therefore dismissal of the complaint is

21   warranted.

22            THE COURT:  Thank you, Ms. Wagner.

23            MS. WAGNER:  Thank you, Your Honor.

24            MR. JOHNSTON:  Your Honor, good afternoon.

25            THE COURT:  Good afternoon.

16

1          MR. JOHNSTON:  I, along with Mr. Bob, will represent

2     the scope of Key Packaging shareholders headed by Dr. Robert

3     Zeitlin and a variety of other, mostly family members.  The key

4     shareholders, as I'll refer to them, Your Honor, fully endorse

5     what Ms. Wagner has argued with respect to 546(e).  The key

6     shareholders support for this position is articulated, I think

7     at length, in the two briefs we've filed, as well as in two

8     letters which I've sent to follow up on letters that Ms. Wagner

9     sent to Judge Shapiro.  Now, I'm not sure whether my letters

10    made it into the record, but they both went to Judge Shapiro,

11    and they've both been included in the binder that, I think, you

12    received.

13          THE COURT:  Yes.  Yes.

14          MR. JOHNSTON:  And I don't think there is any

15    question on the part of counsel that my letters went to the

16    book.  I don't intend to reiterate Ms. Wagner's arguments nor

17    the arguments in the briefs about 546(e) other than to submit

18    that Resorts is the binding precedent in this Circuit.  This

19    Court is, we submit, bound to follow the Resorts precedent.

20    And that the Resorts precedent does provide for full -- what's

21    been referred to in cases as safe harbor community -- for the

22    transactions involved here, because the transactions involved

23    financial institutions.  I intend to focus my remarks, not on

24    546(e) but on a separate statutory argument which is

25    dispositive with respect to all of the defendants.  And that

17

1    defense arises out of Section 1304(a) of the Delaware

2    Fraudulent Conveyance Act.  I hasten to add, Your Honor, that

3    the Section 1304(a) argument is independent of, and in

4    addition, to the federal 546(e) ground.  Either of these

5    grounds, in and of themselves, are sufficient to require

6    dismissal of the complaint.  We submit that together they are

7    insurmountable to the trustee.  Although the 1304(a) argument

8    applies to all of the defendants, I would be speaking

9    specifically about the details of the Key Packaging

10   transaction, by way of illustration, and I suspect that my

11   brothers will chime in to the extent that their transactions

12   may be somewhat different, but I think that most proper

13   transactions share similar patterns, and the argument is pretty

14   much applicable to all of them.

15          First Your Honor, a few undisputed facts with respect

16   to Key Packaging transaction.  As set forth in the first few

17   substantive paragraphs of the complaint, and I would refer you

18   specifically to paragraphs 37 and 32.  In May 1999 and early

19   2000 Plassein Packaging, which was backed by venture capital

20   firms and banks, was organized for the purpose of acquiring a

21   series of small existing packaging companies.  Undoubtedly, as

22   the Court can expect, Plassein Packaging expected, through

23   synergies and economies of scale, to do better as a combined

24   company than the six companies had done individually.  The Key

25   Packaging shareholders were basically older individuals, in

18

1    their sixties, and in some cases even older than that, from the

2    same basic family.  A company -- Key Packaging -- had been in

3    the family for a long time.  And they were attracted to the

4    idea of being able to sell out to another better financed and

5    well-heeled company and use the money for retirement purposes

6    and avoid all of the hassles of having to operate, from long

7    distance, a company.

8            THE COURT:  And then these were totally arms length

9    transactions?

10           MR. JOHNSTON:  Oh, yes.  Yeah.  There is no

11   allegation --

12           THE COURT:  No.

13           MR. JOHNSTON:  -- nor are there any facts to suggest

14   that there was any overlapping between the Plassein Packaging

15   side and the Key Packaging side.

16           THE COURT:  Right

17           MR. JOHNSTON:  And the negotiations, in fact, went on

18   for several months.  I believe there were investment bankers on

19   both sides of the transaction.  In January of 2000 Plassein

20   Packaging paid approximately 25,000,000 dollars to Key

21   Packaging.  Of that amount, half went to pay off existing debt.

22   So at the closing the Key shareholders, the people I represent,

23   received a net of approximately 12,000,000 dollars for all of

24   their stock in Key Packaging.

25           At the same time, as Ms. Wagner said, Plassein

19

1    Packaging also bought a couple of other companies.  And, to

2    follow up on your earlier question, there was no connection

3    between Key Packaging and any of those other companies.  They

4    came, basically, from different parts of the country.  They

5    were in different, although somewhat similar manufacturing

6    lines.  All of them, way one or another, in packaging or foam

7    products.

8            As soon as the transaction was signed in January of

9    2000, most of the Key shareholders, and certainly all of the

10   family member shareholders, immediately left having anything to

11   do with Key Packaging.  Plassein Packaging, which was the

12   acquiring company, proceeded to operate Key Packaging as well

13   as some of these other companies.

14           In August of 2000 Plassein Packaging, as Ms. Wagner

15   alluded to, purchased another company.  In all, Plassein

16   Packaging spent a total of about 100,000,000 dollars to

17   acquire, I believe, six different plastic manufacturing

18   companies by the end of 2000.

19           It wasn't until November of 2001 that the complaint

20   alleges that Plassein, or the constituent companies, first

21   defaulted on any obligations.  And it wasn't until May of 2003,

22   more than three years after the Key Packaging acquisition, that

23   the Chapter 11 was filed.

24           To say the least, the Key Packaging shareholders are

25   now shocked, not to mention dismayed, to find themselves the

20

1    defendants in a suit alleging that the money they received

2    after a long, hard, good faith negotiation for the sale of a

3    solid manufacturing company, is supposedly a fraudulent

4    conveyance.

5         Well, Your Honor, as a matter of law, the trustee has

6    not alleged sufficient facts to make the transaction a

7    fraudulent conveyance.  Quite simply, the claim doesn't fit the

8    statutory fraudulent conveyance requirements under Section

9    1304(a).  I would point out for the Court, although I'm sure

10   the Court is quite familiar with the statute, but it permits a

11   creditor to avoid a transfer, by a debtor, if the debtor made

12   the transfer without receiving reasonably equivalent value, and

13   if, essentially, the transaction rendered the transfer or

14   insolvent.  The key words for the purposes of the 1304(a)

15   analysis are transfer by a debtor.  Here, the complaint

16   alleges, and it's in paragraphs 46 and 69, that Key Packaging,

17   as the so-called January target company, was rendered

18   insolvent.  The trustee's brief, at page 6, makes the same

19   point, that each of the January target companies were

20   supposedly rendered insolvent.  However, the trustee alleges

21   that the various January target companies are, for the purpose

22   of this complaint, debtors.  However the trustee does not

23   satisfy the pleading requirements statute, because he does

24   allege that the debtors, i.e. Key Packaging, made the requisite

25   transfer.

21

1           The complaint does not seek to blame a transfer by

2    the debtor, namely Key Packaging.  All of the documents, all of

3    the relevant documents attached to the complaint by the

4    trustee, show that the transfer of funds to the Key Packaging

5    shareholders were made by Plassein.

6           If you look in particular at the funds flow

7    memorandum, which was attached as Exhibit A to the complaint,

8    the memorandum shows that the outside equity investments and

9    the loan proceeds were delivered to Plassein Packaging.  And

10   that Plassein Packaging made the payments to the various

11   shareholders including the Key Packaging shareholders.  And I

12   can point you, as our brief does, to several specific pages

13   within the funds flow memorandum which corroborate that it was

14   Plassein that made the payments.  For example, in Exhibit A,

15   the funds memorandum, page 08853, says that the company, which

16   is the shorthand for Plassein Packaging --

17           THE COURT:  Right.

18           MR. JOHNSTON: -- shall cause 12,000,000 dollars and

19   change to be paid to Key Packaging shareholders.  Pages number

20   08872 and 73 show the money coming from Plassein Packaging's

21   account to the Key shareholders in the amount of about

22   12,000,000 dollars.  And Exhibit A1, which seems to be in some

23   ways a repeat of some of the documents in Exhibit A, at pages

24   08898 and 8899 confer that Plassein received funds and then

25   paid out, through its bank, 12,000,000 dollars in cash to the

22

1    Key Packaging shareholders.

2            The trustee has conceded at page 27 of his brief that

3    none of the companies in the January transactions, that

4    supposedly were rendered insolvent by the transaction, made

5    payments to the Key shareholders or any of the other package

6    shareholders, for that matter.  Rather the trustee is stuck

7    with the fact that Plassein Packaging made the payments.

8    There's no allegation in the complaint that Plassein Packaging,

9    in making their payment, rendered itself insolvent.  And since

10   it's clear that fraudulent conveyance statute refers to

11   transfers by a debtor which rendered that debtor insolvent the

12   trustee's complaint is defective as a matter of law.  Now the

13   trustee's response is to say to you that the Court should

14   ignore the language of the statute and allow him to challenge

15   transfers by entities other than a debtor, i.e. be able to

16   challenge a payment made by Plassein by supposedly collapsing

17   various transactions into one.  However none of the cases that

18   he cites in this proposition are apposite.

19           THE COURT:  Do you inquire actual fraud?

20           MR. JOHNSTON:  Well, yes.  I mean the first case that

21   he relies on, which is Hechinger, didn't even involve the

22   fraudulent conveyance statute.  It had to do with fiduciary

23   duty.  He does cite a couple of other cases that discuss

24   collapsing in a LBO situation.  But in each one of those cases,

25   whether it be Tabor, whether it be Wieboldt stores, whether it

23

1    be Rosner, all of those cases require that the plaintiff allege

2    actual fraud, actual intent, actual knowledge that the

3    resulting transaction would lead to an insolvent debt.

4         And I might also add to that list of cases one that

5    wasn't cited by the trustee, because it's a more recent case

6    that was referred to in Ms. Wagner's letters and also in her

7    argument today, the National Forge case.  That case did talk

8    about Plassein as well, but it said that the Courts have to

9    focus on the knowledge and the intent of the parties and

10   whether there was, quote, an overall scheme to defraud the

11   creditors.

12        But by contrast, the trustee here has alleged nothing

13   of the sort.  The trustee alleges that Plassein Packaging was

14   formed for the purpose of acquiring multiple manufacturing

15   companies, presumably, as I said before, to take advantage of

16   synergies and economies of scale.  There is nothing but benign

17   business purpose in that allegation.  There's no allegation or

18   complaint that the transaction should be collapsed.  There's no

19   allegation that the Key shareholders intended to do anything

20   other than sell out to a better financed, larger company.

21   There's no allegation that Key shareholders knew or had any

22   suspicion that the transactions would somehow result in Key

23   Packaging being insolvent.  There's no allegation of fraud.

24   And even if one might try to contend, as perhaps Mr. Bennett

25   will do in a few minutes, there is an allegation of fraud in

24

1    the complaint by intuition or inference or otherwise, it would

2    fail to meet the pleading by fraud particularity requirements

3    of Rule 9(b).

4              THE COURT:  And there is no allegation that the

5    shareholders were acting in consort with one another?

6              MR. JOHNSTON:  There are allegations.

7              THE COURT:  Among the various companies.

8              MR. JOHNSTON:  Correct.  And as I said earlier, there

9    is absolutely no connection among any of those companies.  They

10   are all totally separate, independent companies and independent

11   shareholders.  What the trustee seems to have said, and he says

12   so on page 28 of his brief, is well, if the defendant's state

13   that they know actual claims to render the collapsing theory

14   inappropriate, they're free to raise those facts later on in

15   the proceedings.  But what the trustee ignores, Your Honor, is

16   that it is his responsibility to allege facts that weren't

17   collapsing, such as fraudulent intent or actions on the part of

18   the Key shareholders that reflect fraudulent intentions.

19   That's something he's totally failed to do.  Rather than it

20   being the responsibility of the defendants to try to respond

21   with facts to allegations that aren't sufficient.  The trustee

22   simply has things backwards.  Until he alleges sufficient

23   things to bring the case within the rubric of collapsing,

24   there's no responsibility on the part of the defendants to

25   raise facts to rebut collapsing.

25

 1           Moreover, Your Honor, the trustee isn't arguing just

 2    for the collapse of transactions.  He's essentially arguing for

 3    the collapse of companies.  He is suggesting, without having

 4    argued, or piercing of the corporate veil, that Plassein and

 5    Key Packaging and the other target companies as well should

 6    somehow be seen as one company, even though for months those

 7    companies were negotiating on opposite sides of quite separate

 8    tables.  Because as I understand it there were separate

 9    negotiations between Key Packaging, Plassein and the other

10    target companies.  And each one of them took their own course

11    and their own length of time.  Without any basis for piercing

12    of the corporate veil their simply is no basis for positive

13    action against the defendants, inasmuch as the trustee has not

14    satisfied the requirements of collapsing.  Or indeed for a

15    fraudulent conveyance plan.  The case should be discussed,

16    therefore, for failure to plead a fraudulent transfer by 8(f).

17           Your Honor, the Key shareholders also have a second

18    state law argument based on the requirement that the debtor be

19    insolvent at the time that the transfer took place.  And we

20    have argued that the trustee's own attachments to the plate

21    demonstrate that Key Packaging was not insolvent as of the time

22    of the transfer, either just before or just after.  We made the

23    point in the briefs.  I'm not going to belabor it here.  Unless

24    the Court has any questions I'm prepared to rely on our briefs

25    for that point.  So, in summary, Your Honor, on behalf of the

26

1    Key Packaging defendants, we submit that Section 546(e) defense

2    defeats the trustee's claims with respect to all of the

3    defendants, and certainly with respect to the Key Packaging

4    defendants.

5              In addition, the fact that it was Plassein Packaging

6    that made the payments to the Key Packaging shareholders,

7    rather than Key Packaging, defeats the fraudulent conveyance

8    plan as a second statutory basis.

9              Therefore all the claims against Dr. Zeitlin and his

10   other Key Packaging defendants should be dismissed.  Thank you

11   very much.

12             THE COURT:  Thank you very much, Mr. Johnston.  Mr.

13   Sarna?

14             MR. SARNA:  Thank you, Your Honor.  It's not often

15   that an attorney gets to say me too.  And it's not often that

16   an attorney actually takes advantage of the opportunity to be

17   brief.  But I will say both me too and be brief.  The only

18   thing that I would add here is that when we were here last

19   time, and in the trustee's response to the various motions to

20   dismiss, the trustee has himself conceded that this Court is

21   bound to follow Resorts.  An he has then reserved the right to

22   make an argument that that decision ought to be reconsidered

23   and modified to the Circuit Court.  That's on page ten in

24   footnote number 3.  So I would just want to make sure that's on

25   the record.    Point that out.  Say me too and I'll leave it to

27

1    someone else.

2          THE COURT:  Thank you.  Thank you.  Mr. Palacio, good

3    afternoon and was it you who made, or your colleagues who made,

4    the statute of limitations argument?

5          MR. PALACIO:  I don't believe that was ours.  It was

6    Marshall Plastic.

7          THE COURT:  It was?  Okay.

8          MR. SARNA:  And I believe that that's already been

9    addressed, and so we --

10         THE COURT:  We've thrown that argument.

11         MR. SARNA:  We're being especially brief.

12         THE COURT:  Okay.  Thank you, Mr.Sarno.

13         MR. PALACIO:  Your Honor, I will be equally as brief

14   by joining all the arguments already expressed as those

15   arguments apply to our cases and specific facts as we believe

16   they are completely applicable, and therefore I'll rest on the

17   arguments made.  Your Honor, I simply rest this point to make

18   that point on the record and second, reserve my right on

19   rebuttal to be heard, if the Court deems it appropriate.

20         THE COURT:  Thank you very much, Mr. Palacio.  I

21   think we've now heard from all the defendants, and I'm going to

22   turn the argument over to Mr. Bennett.  And I would note to

23   you, that I think those of us who knew him know that then Judge

24   McKelvey was no shrinking violet and he recognized that whether

25   he thought this work was right or wrong it was -- he was not

28

1   free to disregard it.  And I guess my question for you, Mr.

2   Bennett, is, you know, in a few weeks I'm going off to a

3   conference, a Third Circuit conference -- and tell me why, if I

4   follow your arguments, it will be my last Third Circuit

5   conference.

6           MR. BENNETT:  Hey, Your Honor.  My position is that,

7   as set forth in our brief, that Resorts establishes the

8   application of 546(e) to a settlement payment, establishes that

9   a leveraged buyout can fall within the purview of 546(e).  It

10  does run contrary to a number of other decisions, but

11  unfortunately for the trustee's case those other decisions are

12  all outside the Third Circuit, and if I want to completely

13  reverse Resorts, I agree that I need to do that in front of the

14  Third Circuit.  However, we did argue that there is an

15  exception open in Resorts, which is that it needs to be a

16  situation -- or the factual presentation needs to be one in

17  which the public is involved in which there is public

18  securities being traded, transacted, sold, bought or paid for.

19  And that a purely private transaction, such as the one that's

20  before you today, where the only involvement of any entity that

21  would be done within the purview of a settlement payment, is

22  Fleet acting as a financial institution.  But solely acting to

23  transfer funds by wire transfer out of the buyer's account into

24  the seller's account.  That that transaction was not covered by

25  Resorts, was not governed by Resorts, and therefore you would

29

1    be free to determine that this case could go forward, because

2    it's not a settlement payment contemplated either by the

3    statute or by Resorts.  Now I understand that my argument is

4    now directly contrary to the position taken by Judge Walrath in

5    the IT Group case.  All I can say on that point, Your Honor, is

6    I think Judge Walrath was wrong, and I would ask you to find

7    different from her.  And find that in a purely private

8    transaction 546(e) is not applicable.

9              THE COURT:  Okay.  And as far as your position is

10   concerned, you're not challenging that Fleet Bank is a

11   financial institution within the definition of a 546?

12             MR. BENNETT:  I am not challenging that Fleet is a

13   financial institution as defined by, I think it's 10122.  But

14   that it is not in the context of what it did in this case.  It

15   was certainly not acting to transfer securities or act in a

16   capacity as a custodian or other holder of securities.  So it

17   was not in any way acting under any of the commonly referred to

18   provisions under 741, such as a clearing.  It was not acting,

19   certainly, as a clearing house or otherwise.  That it had a

20   limited role solely to effectuate the wire transfer.

21             THE COURT:  And are you alleging -- I don't see it

22   under plaintiff or any allegation of actual fraud.

23             MR. BENNETT:  No, Your Honor, there is none.  It's

24   based on a constructive fraud.

25             THE COURT:  Okay.  Okay.  I think I understand your

30

```
1    position and it's essentially that if I have ever found the
2    Third Circuit to reconsider its decision of the Resorts case.
3    Or to -- (Indiscernible) the Resorts decision to public
4    trading.
5              MR. BENNETT:  That is correct, Your Honor.
6              THE COURT:  Okay.
7              MR. BENNETT:  I don't know to what extent you wish me
8    to address Attorney Johnston's argument, though, for the Key
9    Shareholders on the application of 1304.  To the extent that
10   you wish to hear anything on that, I'd be referred to the
11   Hechinger's case, which is a Third Circuit Case, and their
12   definition of the application of the facts to almost identical
13   to these facts, define them as a leveraged buyout.  And finding
14   that the fraudulent conveyance law would be applicable.  I'm
15   not asserting that there was any actual intent, but that's not
16   necessary.  You can find constructive intent where, as they
17   defined in Hechinger's, the acquiring company's assets are
18   leveraged -- I'm sorry the target company's assets are
19   leveraged for the purposes of borrowing and paying off the
20   selling shareholders.  Thank you, Your Honor.
21             THE COURT:  Thank you, Mr. Bennett.  Mr. Johnston,
22   perhaps you could just address that final fling on the
23   Hechinger's decision and the Delaware code Section 1304(a).
24             MR. JOHNSTON:  Your Honor, I think I would simply say
25   that the Hechinger case did not involve a fraudulent conveyance
```

31

```
1    claim, as such, but rather involved the application of the

2    future A to E law, so it would be my view that Hechinger is not

3    applicable in this case.  I did address some of the other cases

4    that dealt with fraudulent conveyance claims, and in each one

5    of those the Court required a showing of intent or fraud or a

6    scheme on the part of the defendants.   And that's simply not

7    present in this case.

8              THE COURT:  Thank you, Mr. Johnston.

9              MR. JOHNSTON:  And Your Honor, just one further

10   point.  I have not yet submitted a form order as I know at

11   least one of the other defendants did, and so if at some point

12   it becomes appropriate I would happily do so.

13             THE COURT:  If need be I'll ask your local counsel to

14   do that for Mr. Baldwin, but I would anticipate doing the form

15   work myself.  But I appreciate the offer.

16             MR. JOHNSTON:  Thank you very much.

17             THE COURT:  Is there anything further from anyone?

18   Well I appreciate it.  And as I told you I've read the briefs

19   carefully, and named many of the cases, and given the long

20   delay, given the fact that I know that crisis effect that Mr.

21   Bennett may be trying to take this matter upon further, I think

22   I would like to issue, at least, a fairly careful written

23   opinion, but having read the arguments and heard argument, in

24   particular the oral argument, I've not been dissuaded from my

25   view that dismissal is going to be appropriate -- is
```

32

1    appropriate in this case.  And I will be, as I said, writing

2    the -- the date for taking your opinion, Mr. Bennett, doesn't

3    run until I actually issue the order -- but I haven't read

4    anything that convinces me that this isn't a settlement payment

5    which the Resorts case covers.  And I also appreciate -- I do

6    want to look again a little more carefully and go back and look

7    at the Delaware code Section II fraudulent conveyances 1304.  I

8    believe that Mr. Johnston has made a good point on that as

9    well.  I just want to take another look at that position before

10   I make a decision, but regardless of where I come out on the

11   Delaware code provision, the state provision, I just think that

12   under the bankruptcy statute, the plaintiff has not made out a

13   case which should proceed and then that will be what we've been

14   receiving from the immersion orders so that we can move things

15   along here.  I appreciate everyone's patience, and we'll stand

16   on recess.  Thank you very much, counsel.

17              MR. SPEAKER:  Thank you, Your Honor.

18              MR. SPEAKER:  Thank you.

19              MR. SPEAKER:  Thank you, Your Honor.

20         (Time noted:  3:40 PM)

21

22

23

24

25

33

1

2                    C E R T I F I C A T I O N

3

4    I, Hana Copperman, court approved transcriber, certify that the

5    foregoing is a correct transcript from the official electronic

6    sound recording of the proceedings in the above-entitled

7    matter.

8
     Hana Copperman    Digitally signed by Hana Copperman
                       DN: cn=Hana Copperman, c=US
                       Reason: I am the author of this document
9    _____ Date: 2007.05.23 11:27:02 -04'00'    May 21, 2007___

10   Signature of Transcriber              Date

11

12   Hana Copperman_____

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

able 18:4 22:15
above-entitled 33:6
absolutely 24:9
absurd 12:7,19
accommodating 6:6
account 11:11 21:21
 28:23,24
acquire 19:17
acquired 10:18,19
 11:2
acquiring 11:5
 17:20 19:12 23:14
 30:17
acquisition 19:22
act 17:2 29:15
acting 24:5 28:22,22
 29:15,17,18
action 25:13
actions 24:17
actual 22:19 23:2,2
 23:2 24:13 29:22
 30:15
add 17:2 23:4 26:18
addition 17:4 26:5
address 30:8,22 31:3
addressed 14:2 27:9
addressing 10:3
admitted 8:25
advantage 23:15
 26:16
adversary 2:7 7:14
advised 6:16
afternoon 6:2 7:3,4
 8:21,22 9:7,8,13
 15:24,25 27:3
agency 14:12
ago 6:9,11 12:25
agree 28:13
AL 1:8
albios 14:23
allegation 18:11
 22:8 23:17,17,19
 23:21,23,25 24:4
 29:22
allegations 24:6,21

allege 20:24 23:1
 24:16
alleged 20:6 23:12
alleges 10:21 19:20
 20:16,20 23:13
 24:22
alleging 20:1 29:21
allow 22:14
alluded 19:15
ambiguous 15:9,12
America 11:9,11,11
amount 18:21 21:21
AMY 4:8
analysis 12:16 14:25
 20:15
Anderson 4:17 8:23
anticipate 31:14
apologize 6:20
apology 6:8
Appeals 12:3
applicable 14:5
 17:14 27:16 29:8
 30:14 31:3
application 11:23
 12:20 14:13,22
 28:8 30:9,12 31:1
applied 15:1,1,1
applies 11:18 14:10
 15:20 17:8
apply 12:20 13:2
 14:14 27:15
applying 12:6
apposite 22:18
appreciate 9:16,19
 31:15,18 32:5,15
appreciative 6:24
appropriate 27:19
 31:12,25 32:1
approved 33:4
approximately
 18:20,23
April 1:18
argue 10:12,13
 11:18 12:22 28:14
argued 12:24 16:5
 25:4,20

argues 15:8
arguing 25:1,2
argument 6:10,16
 6:18 7:22 8:5,12
 10:8 13:3,7,22
 16:24 17:3,7,13
 23:7 25:18 26:22
 27:4,10,22 29:3
 30:8 31:23,24
arguments 7:16,18
 7:23 8:1 13:14,19
 13:19 16:16,17
 27:14,15,17 28:4
 31:23
arises 17:1
arms 18:8
articulated 16:6
Ashby 4:10 9:20
asking 6:12
asserting 30:15
assets 30:17,18
Associates 5:2 9:9
assume 11:13
assurance 6:14
assure 7:1
attached 21:3,7
attachments 25:20
attorney 26:15,16
 30:8
Attorneys 3:4,11,19
 4:3,11,18 5:3,10
attracted 18:3
August 10:19 19:14
Avenue 3:20 4:12
 5:4
avoid 7:17,20 11:1
 18:6 20:11
avoidable 12:2
avoidance 12:22,24
 14:1
A1 21:22

**B**

B 1:21
BA 3:11,19 7:9,21
 8:13

back 15:13 32:6
backed 17:19
backwards 24:22
Baldwin 4:24 8:21
 8:22,23 9:4,5
 31:14
bank 11:6,9,10,11
 11:11 21:25 29:10
bankers 18:18
bankruptcy 1:2,14
 1:23 10:3 12:1
 32:12
banks 17:20
based 25:18 29:24
basic 18:2
basically 17:25 19:4
basis 25:11,12 26:8
Beacon 3:6
began 12:3
behalf 7:8 8:13 9:21
 25:25
belabor 25:23
believe 18:18 19:17
 27:5,8,15 32:8
benefit 6:23
benign 23:16
Bennett 3:8 6:4,5
 23:24 27:22 28:2,6
 29:12,23 30:5,7,21
 31:21 32:2
best 7:20
better 17:23 18:4
 23:20
binder 16:11
binding 16:18
bit 6:7 7:1
blame 21:1
blind 12:7
block 11:19
Bob 7:8 16:1
book 16:16
borrowing 30:19
Boston 3:7 5:12
bought 19:1 28:18
bound 11:21 12:20
 14:13 15:5,5 16:19

26:21
**Box** 4:5,13,21
**Brandt** 2:3 3:4 4:3
**brief** 7:22 13:1 14:5
  20:18 21:12 22:2
  24:12 26:17,17
  27:11,13 28:7
**briefing** 14:1
**briefs** 7:16,24 8:3
  10:7 11:20 13:23
  16:7,17 25:23,24
  31:18
**bring** 24:23
**broad** 12:10 13:24
**brothers** 17:11
**business** 23:17
**buyer's** 28:23
**buying** 14:16
**buyout** 14:11 28:9
  30:13

—————— **C** ——————
**C** 3:2 6:1 33:2,2
**call** 9:21
**called** 10:17
**cancelled** 6:18
**capacity** 29:16
**capital** 3:11,19 7:9
  7:21 8:13 11:10,11
  13:16 15:10 17:19
**careful** 31:22
**carefully** 8:4 10:7
  31:19 32:6
**case** 1:4 6:8,19 7:2
  10:20 11:10,24
  12:15 13:4,18,20
  13:22 14:2,4,6,7,9
  14:11,15,19 15:2,3
  15:19 22:20 23:5,7
  23:7 24:23 25:15
  28:11 29:1,5,14
  30:2,11,11,25 31:3
  31:7 32:1,5,13
**cases** 8:4 11:7 16:21
  18:1 22:17,23,24
  23:1,4 27:15 31:3

31:19
**cash** 12:11 21:25
**cause** 21:18
**certain** 4:11 9:21
  14:20
**certainly** 6:7 10:15
  11:15,18 12:22
  15:6 19:9 26:3
  29:15,19
**certify** 33:4
**challenge** 22:14,16
**challenging** 29:10
  29:12
**change** 21:19
**Chapter** 3:4 4:3
  19:23
**CHARLES** 3:8
**Chebeir** 4:11 9:22
**chime** 17:11
**circuit** 11:22,22
  13:4 15:18,18
  16:18 26:23 28:3,4
  28:12,14 30:2,11
**Circuit's** 13:12,21
**cite** 22:23
**cited** 13:23 23:5
**cites** 22:18
**claim** 10:24 11:19
  12:4 20:7 31:1
**claims** 24:13 26:2,9
  31:4
**clear** 12:5,6 15:14
  15:15 22:10
**clearance** 13:2
**clearing** 12:15 14:12
  29:18,19
**clearly** 6:8
**closing** 18:22
**code** 10:4 30:23 32:7
  32:11
**codefendants** 7:24
**collapse** 25:2,3
**collapsed** 23:18
**collapsing** 22:16,24
  24:13,17,23,25
  25:14

**colleagues** 27:3
**combined** 17:23
**come** 32:10
**coming** 21:20
**commonly** 29:17
**community** 16:21
**companies** 10:18
  17:21,24 19:1,3,13
  19:18,20 20:19,21
  22:3 23:15 24:7,9
  24:10 25:3,5,7,10
**company** 3:11,19
  7:9 10:17,21 11:10
  11:25 13:22 14:16
  17:24 18:2,5,7
  19:12,15 20:3,17
  21:15 23:20 25:6
**company's** 14:19
  30:17,18
**compelled** 15:6
**complaint** 10:8,17
  10:20 15:20 17:6
  17:17 19:19 20:15
  20:22 21:1,3,7
  22:8,12 23:18 24:1
**complete** 12:12
**completely** 27:16
  28:12
**conceded** 22:2 26:20
**concerned** 29:10
**concluded** 14:24
**conclusion** 15:3,4
**confer** 21:24
**conference** 28:3,3,5
**Congratulations**
  9:18
**connection** 14:20
  19:2 24:9
**consort** 24:5
**constituent** 19:20
**constructive** 10:23
  29:24 30:16
**contemplated** 29:2
**contend** 23:24
**context** 29:14
**continue** 6:19

**contrary** 28:10 29:4
**contrast** 23:12
**controlling** 15:17,18
**conveyance** 11:19
  17:2 20:4,7,8
  22:10,22 25:15
  26:7 30:14,25 31:4
**conveyances** 10:23
  10:23 32:7
**convinces** 32:4
**Copperman** 2:24
  33:4,12
**Corp** 1:8 2:4 11:10
**corporate** 25:4,12
**corporation** 3:5
  10:18 11:6,12
**corporations** 11:2
**correct** 6:4,5 24:8
  30:5 33:5
**corroborate** 21:13
**Corroon** 4:17 8:23
**counsel** 6:2,3 7:19
  7:23 10:12,13
  16:15 31:13 32:16
**country** 19:4
**couple** 19:1 22:23
**course** 9:12 12:13,25
  25:10
**court** 1:2,14 6:2,7
  7:6,7,12,25 8:3,9
  8:14,18,20 9:2,5,8
  9:11,14,18,23 10:1
  10:5,11,25 11:13
  11:16,21 12:3,7,14
  12:16,20 13:17
  14:21,24 15:4,5,16
  15:22,25 16:13,19
  17:22 18:8,12,16
  20:9,10 21:17
  22:13,19 24:4,7
  25:24 26:12,20,23
  27:2,7,10,12,19,20
  29:9,21,25 30:6,21
  31:5,8,13,17 33:4
**courtroom** 6:3 9:15
**courts** 13:15 15:14

15:15,16 23:8
**covered** 28:24
**covers** 32:5
**co-counsel** 8:7,25
**creation** 14:20
**creditor** 20:11
**creditors** 23:11
**crisis** 31:20
**CROSS** 4:2
**custodian** 29:16
**CUTLER** 5:9

**D**

**D** 6:1
**date** 32:2 33:10
**David** 4:24 8:22
**Davis** 3:18 8:7
**days** 6:21
**DE** 3:14 4:6,14,22
**dealt** 31:4
**debt** 18:21 23:3
**debtor** 1:10 20:11
20:11,15 21:2
22:11,11,15 25:18
**debtors** 20:22,24
**decide** 10:14
**decided** 6:9,15 7:16
14:9
**decision** 6:13 7:2
11:21 12:3 13:12
13:14,21,23 14:13
14:17,25 15:7,11
26:22 30:2,3,23
32:10
**decisions** 14:8,21
15:13 28:10,11
**decrees** 12:23
**deems** 27:19
**defaulted** 19:21
**defeats** 26:2,7
**defective** 22:12
**defendant** 5:3 7:9
8:2 9:10
**defendants** 4:18
5:10 7:13,15 8:24
16:25 17:8 20:1

24:20,24 25:13
26:1,3,4,10 27:21
31:6,11
**defendant's** 24:12
**defense** 17:1 26:1
**deferential** 6:22
**deferring** 6:13
**define** 30:13
**defined** 29:13 30:17
**definition** 12:8 13:8
29:11 30:12
**defraud** 23:10
**Delaware** 1:3,3,16
4:12 17:1 30:23
32:7,11
**delay** 31:20
**delivered** 21:9
**demonstrate** 25:21
**described** 8:24
**details** 17:9
**determine** 29:1
**different** 17:12 19:4
19:5,17 29:7
**directly** 29:4
**disbriefing** 14:7
**discuss** 22:23
**discussed** 25:15
**discussion** 15:10
**dismayed** 19:25
**dismiss** 2:2 7:11,11
26:20
**dismissal** 15:20 17:6
31:25
**dismissed** 26:10
**dispositive** 16:25
**dispute** 11:3
**disregard** 15:17
28:1
**dissuaded** 31:24
**distance** 18:7
**district** 1:3 14:10,18
15:17
**districts** 15:2
**divide** 7:18
**docket** 7:10
**documents** 21:2,3

21:23
**doing** 31:14
**dollars** 18:20,23
19:16 21:18,22,25
**DORR** 5:9
**Dr** 16:2 26:9
**duplication** 7:20
**duty** 22:23

**E**

**E** 1:21,21 3:2,2,23
6:1,1 31:2 33:2
**earlier** 19:2 24:8
**early** 17:18
**economies** 17:23
23:16
**effect** 31:20
**effectuate** 29:20
**efficient** 7:18
**effort** 6:23 7:17
**either** 17:4 25:22
29:2
**electronic** 33:5
**endorse** 16:4
**enterprise** 14:15
**entities** 22:15
**entitled** 14:3
**entity** 14:3,16 28:20
**equally** 27:13
**equity** 21:8
**equivalent** 20:12
**ESOP** 14:20
**especially** 27:11
**ESQ** 3:8,16,23 4:8
4:15,24 5:7,14
**essence** 7:21
**essentially** 20:13
25:2 30:1
**establishes** 28:7,8
**Estates** 2:3
**ET** 1:8
**EVANS** 4:8
**everyone's** 32:15
**example** 7:21 11:9
21:14
**exception** 28:15

**Exhibit** 21:7,14,22
21:23
**existing** 17:21 18:21
**expect** 17:22
**expected** 17:22
**experienced** 6:25
**explained** 6:17
**explanation** 6:8
**expressed** 27:14
**expressly** 13:3
**extent** 7:23 17:11
30:7,9
**extraneous** 13:13
**extremely** 6:22 8:4
11:23 12:10 13:24

**F**

**F** 1:21 33:2
**face** 15:14
**fact** 13:15 18:17
22:7 26:5 31:20
**facts** 17:15 18:13
20:6 24:14,16,21
24:25 27:15 30:12
30:13
**factual** 28:16
**fail** 24:2
**failed** 24:19
**failure** 25:16
**fairly** 31:22
**faith** 20:2
**fall** 28:9
**familiar** 20:10
**family** 16:3 18:2,3
19:10
**far** 29:9
**federal** 17:4
**felt** 14:12 15:6
**fiduciary** 22:22
**filed** 12:1 16:7 19:23
**Film** 5:3 9:10
**final** 30:22
**finally** 6:15 15:8
**financed** 18:4 23:20
**financial** 11:6,8,12
11:17 12:18 13:5

13:24 16:23 28:22
29:11,13
**find** 15:8 19:25 29:6
29:7 30:16
**finding** 30:13
**fine** 10:15
**Finger** 3:10 7:8
**firm** 9:20
**firms** 17:20
**first** 17:15,16 19:20
22:20
**fit** 20:7
**Fleet** 11:6,10,14
28:22 29:10,12
**fling** 30:22
**flow** 21:6,13
**foam** 19:6
**focus** 16:23 23:9
**follow** 15:6 16:8,19
19:2 26:21 28:4
**footnote** 26:24
**forced** 14:6
**foregoing** 33:5
**Forge** 14:17 23:7
**form** 31:10,14
**formed** 23:14
**forth** 17:16 28:7
**forthcoming** 6:20
**forward** 29:1
**found** 12:14 13:23
30:1
**fraud** 10:24 22:19
23:2,23,25 24:2
29:22,24 31:5
**fraudulent** 10:22,23
11:19 17:2 20:3,7
20:8 22:10,22
24:17,18 25:15,16
26:7 30:14,25 31:4
32:7
**free** 15:17 24:14
28:1 29:1
**friends** 8:16
**front** 28:13
**full** 16:20
**fully** 16:4

**funds** 11:5,7,10
13:25 14:14 21:4,6
21:13,15,24 28:23
**further** 12:6 31:9,17
31:21
**future** 31:2

---
## G

**G** 6:1
**Geddes** 4:10 9:21
**generally** 12:11
14:23
**given** 6:23 31:19,20
**go** 15:13 29:1 32:6
**going** 7:18,20,21
9:23 25:23 27:21
28:2 31:25
**good** 6:2 7:3,4,4,6
8:3,9,20,21,22 9:6
9:6,8,13 15:24,25
20:2 27:2 32:8
**governed** 28:25
**great** 14:21
**GROSS** 1:22
**ground** 17:4
**grounds** 17:5
**Group** 14:9 29:5
**guess** 9:15 28:1

---
## H

**hac** 8:25
**HALE** 5:9
**half** 18:21
**Hana** 2:24 33:4,12
**HANIFY** 3:3
**happened** 12:13
**happily** 31:12
**harbor** 16:21
**hard** 20:2
**hassles** 18:6
**hasten** 17:2
**headed** 16:2
**hear** 30:10
**heard** 10:2 27:19,21
31:23
**HEARING** 2:2
**Hechinger** 13:22

15:16 22:21 30:25
31:2
**Hechinger's** 30:11
30:17,23
**held** 12:18,21 14:3,4
14:8,10,14,19
15:15
**Hercules** 4:19
**Hey** 28:6
**history** 15:9,10,13
**holder** 11:24 29:16
**holdings** 13:15
**HON** 1:22
**Honor** 6:5 7:4,9,14
7:19 8:6,22 9:3,4,6
9:13,16,22 10:2,6
10:16,16 11:3,20
12:13,22 13:3,11
15:11,19,23,24
16:4 17:2,15 20:5
24:15 25:1,17,25
26:14 27:13,17
28:6 29:5,23 30:5
30:20,24 31:9
32:17,19
**house** 29:19

---
## I

**idea** 18:4
**identical** 30:12
**ignore** 22:14
**ignores** 24:15
**II** 32:7
**illustration** 17:10
**immediately** 19:10
**immersion** 32:14
**immune** 13:25
**inadvertently** 11:25
**inappropriate** 24:14
**inasmuch** 25:13
**included** 16:11
**including** 21:11
**independent** 17:3
24:10,10
**Indiscernible** 30:3
**individually** 17:24

**individuals** 17:25
**industry** 10:19
12:10 13:2
**inevitable** 7:19
**inference** 24:1
**inquire** 22:19
**inquiry** 12:6
**insolvent** 20:14,18
20:20 22:4,9,11
23:3,23 25:19,21
**institution** 11:6,8,17
12:15,18 13:5,24
28:22 29:11,13
**institutions** 11:12
16:23
**insurmountable**
17:7
**intend** 16:16,23
**intended** 13:13
23:19
**intent** 23:2,9 24:17
30:15,16 31:5
**intentional** 10:24
**intentions** 24:18
**International** 1:8
2:4 11:22
**interpretation** 12:4
**introducing** 8:7
**introductions** 8:17
**intuition** 24:1
**investment** 18:18
**investments** 21:8
**involve** 14:11 22:21
30:25
**involved** 11:12,18
12:15 13:5,6,25
16:22,22 28:17
31:1
**involvement** 28:20
**issue** 6:14,17 14:6
14:22 31:22 32:3
**issuer** 12:1
**issues** 15:11
**i.e** 20:24 22:15

---
## J

**J** 3:16 4:24
**Jacob** 9:9
**JAMES** 5:7
**January** 10:17
  18:19 19:8 20:17
  20:19,21 22:3
**Johnston** 5:14 9:1,3
  15:24 16:1,14
  18:10,13,17 21:18
  22:20 24:6,8 26:12
  30:21,24 31:8,9,16
  32:8
**Johnston's** 30:8
**joining** 27:14
**JR** 3:8,16
**judge** 1:23 6:11,11
  6:21,22,25 14:9
  16:9,10 27:23 29:4
  29:6

### K
**Karen** 3:23 8:7
**kept** 6:12,13
**KEVIN** 1:22
**key** 4:18 5:10 8:24
  16:2,3,5 17:9,16
  17:24 18:2,15,20
  18:22,24 19:3,9,11
  19:12,22,24 20:14
  20:16,24 21:2,4,11
  21:19,21 22:1,5
  23:19,21,22 24:18
  25:5,9,17,21 26:1
  26:3,6,7,10 30:8
**kind** 10:11 12:9
**King** 1:15 3:3,13
**knew** 23:21 27:23
**know** 6:24 7:9 10:6
  10:9,16 11:20
  24:13 27:23 28:2
  30:7 31:10,20
**knowledge** 23:2,9
**knows** 7:14

### L
**language** 12:4,5,7
  13:13 22:14

**larger** 23:20
**law** 9:20 15:17,18
  20:5 22:12 25:18
  30:14 31:2
**Layton** 3:10 7:8
**LBO** 22:24
**lead** 23:3
**leads** 12:7
**leave** 26:25
**left** 19:10
**legislative** 15:9,10
  15:13
**length** 14:21 16:7
  18:8 25:11
**lengthy** 14:25
**letters** 16:8,8,9,15
  23:6
**leveraged** 14:11
  28:9 30:13,18,19
**Lexington** 3:20
**limitations** 27:4
**limited** 29:20
**lines** 19:6
**list** 23:4
**literal** 11:23 12:17
  12:19 14:13,25
**little** 6:7 7:1 32:6
**LLC** 4:2
**LLP** 4:17 5:9
**loan** 21:9
**local** 31:13
**logic** 15:6
**long** 6:9,11 15:10
  18:3,6 20:2 31:19
**look** 15:9 21:6 32:6
  32:6,9
**looking** 12:4
**Loranger** 14:4
**lot** 6:23

### M
**MA** 3:7 5:12
**making** 22:9
**manufacturing** 19:5
  19:17 20:3 23:14
**Market** 4:4,20

**markets** 15:10
**Marshall** 5:3 9:10
  27:6
**matter** 1:6 6:10 7:10
  11:14 20:5 22:6,12
  31:21 33:7
**McKelvey** 27:24
**mean** 12:3 22:20
**means** 15:14,15
**meet** 24:2
**member** 19:10
**members** 16:3
**memorandum** 21:7
  21:8,13,15
**mention** 19:25
**minutes** 23:25
**modified** 26:23
**money** 18:5 20:1
  21:20
**months** 6:10 18:18
  25:6
**morning** 9:6
**motion** 2:2 7:10
**motions** 7:11 26:19
**move** 10:10 32:14
**Mr.Sarno** 27:12
**multiple** 7:15 23:14

### N
**N** 3:2 6:1 33:2
**named** 31:19
**National** 14:17 23:7
**necessary** 12:6 13:6
  30:16
**need** 10:9 28:13
  31:13
**needs** 28:15,16
**negotiating** 25:7
**negotiation** 20:2
**negotiations** 18:17
  25:9
**net** 18:23
**New** 3:21 5:5
**newest** 9:14
**North** 3:13 4:4,20
**note** 12:8 27:22

**noted** 15:16 32:20
**November** 19:19
**number** 7:14 12:24
  14:7 21:19 26:24
  28:10
**NY** 3:21 5:5

### O
**O** 1:21 6:1 33:2
**obligations** 19:21
**obviously** 6:18
**occurred** 11:4
**offer** 31:15
**official** 33:5
**Oh** 18:10
**Okay** 27:7,12 29:9
  29:25,25 30:6
**older** 17:25 18:1
**open** 28:15
**operate** 18:6 19:12
**operated** 10:21
**opinion** 6:17,19
  31:23 32:2
**opportunity** 26:16
**opposite** 25:7
**oral** 6:10,16,18
  31:24
**order** 31:10 32:3
**orders** 32:14
**organized** 17:20
**Otto** 7:15
**ought** 26:22
**outside** 21:8 28:12
**overall** 23:10
**overlapping** 18:14

### P
**P** 3:2,2 6:1
**package** 22:5
**packaging** 4:18 5:10
  8:24 10:18,19 16:2
  17:9,16,19,21,22
  17:25 18:2,14,15
  18:20,21,24 19:1,3
  19:6,11,11,12,14
  19:16,22,24 20:16
  20:24 21:2,4,9,10

21:11,16,19 22:1,7
22:8 23:13,23 25:5
25:9,21 26:1,3,5,6
26:7,10
**Packaging's** 21:20
**page** 20:18 21:15
22:2 24:12 26:23
**pages** 21:12,19,23
**paid** 12:1 18:20
21:19,25 28:18
**Palacio** 4:15 9:12,13
9:16,19 27:2,5,13
27:20
**paragraphs** 17:17
17:18 20:16
**part** 9:20 16:15
24:17,24 31:6
**particular** 10:12
21:6 31:24
**particularity** 24:2
**parties** 23:9
**partner** 9:14
**parts** 19:4
**patience** 32:15
**patterns** 17:13
**pay** 18:21
**paying** 30:19
**payment** 12:2,8,11
12:18 13:9,9 22:9
22:16 28:8,21 29:2
32:4
**payments** 21:10,14
22:5,7 26:6
**Pennsylvania** 14:18
**people** 18:22
**permits** 20:10
**PICKERING** 5:9
**piercing** 25:4,11
**place** 25:19
**plaintiff** 23:1 29:22
32:12
**plan** 10:14 25:15
26:8
**Plassein** 1:8 2:3
10:17 11:3 17:19
17:22 18:14,19,25

19:11,14,15,20
21:5,9,10,14,16,20
21:24 22:7,8,16
23:8,13 25:4,9
26:5
**plastic** 5:3 9:10
19:17 27:6
**plate** 25:20
**Plaza** 4:19
**plead** 25:16
**pleading** 20:23 24:2
**please** 7:7
**PM** 1:19 32:20
**podium** 8:16
**point** 8:15 10:9 20:9
20:19 21:12 25:23
25:25 26:25 27:17
27:18 29:5 31:10
31:11 32:8
**Polk** 3:18 8:8
**position** 11:13,16,20
16:6 28:6 29:4,9
30:1 32:9
**positive** 25:12
**Potter** 4:17 8:23
**precedent** 16:18,19
16:20
**prepared** 8:5 25:24
**present** 8:12 31:7
**presentation** 28:16
**presumably** 23:15
**pretty** 17:13
**private** 14:23 28:19
29:7
**privately** 14:3,14,18
**pro** 8:25
**proceed** 32:13
**proceeded** 19:12
**Proceeding** 2:2
**proceedings** 24:15
33:6
**proceeds** 21:9
**products** 19:7
**Professional** 3:5
**proper** 17:12
**proposition** 22:18

**protected** 12:9,21,23
**protection** 14:4
**provide** 16:20
**provided** 15:3
**provision** 32:11,11
**provisions** 29:18
**public** 11:24 14:23
28:17,17 30:3
**publicly** 13:10 14:12
**purchase** 13:10
**purchased** 19:15
**purely** 28:19 29:7
**purpose** 17:20 20:21
23:14,17
**purposes** 11:16 18:5
20:14 30:19
**pursuant** 11:2,5
**purview** 28:9,21
**P.A** 3:10
**P.C** 3:3 5:2 9:9
**P.O** 4:5,13,21

---

**Q**

**Quality** 15:3
**question** 10:3 14:2
16:15 19:2 28:1
**questions** 10:12,13
25:24
**quickly** 7:2 10:7
**quite** 20:7,10 25:7
**quote** 14:11 23:10

---

**R**

**R** 1:21 3:2,8 6:1 33:2
**raise** 24:14,25
**reached** 15:2
**read** 7:15 8:3 10:6
13:8,13 31:18,23
32:3
**reading** 10:16 11:20
12:17
**really** 6:22 10:11
13:7
**reason** 15:12
**reasonably** 20:12
**reasoning** 15:6
**rebut** 24:25

**rebuttal** 27:19
**received** 6:14 16:12
18:23 20:1 21:24
**receiving** 20:12
32:14
**recess** 32:16
**recognized** 27:24
**reconsider** 30:2
**reconsidered** 26:22
**record** 7:7 9:20
16:10 26:25 27:18
**recording** 33:6
**recover** 12:2
**redemption** 14:19
**Reeves** 7:15
**refer** 16:4 17:17
**referred** 16:21 23:6
29:17 30:10
**refers** 22:10
**reflect** 24:18
**regardless** 32:10
**reiterate** 16:16
**rejected** 13:3,14,18
**relevant** 12:16 21:3
**relies** 22:21
**rely** 25:24
**relying** 7:22
**remarks** 16:23
**render** 24:13
**rendered** 20:13,17
20:20 22:4,9,11
**repeat** 21:23
**repetition** 7:17
**represent** 8:23 16:1
18:22
**representing** 9:10
**require** 17:5 23:1
**required** 31:5
**requirement** 13:9
25:18
**requirements** 20:8
20:23 24:2 25:14
**requisite** 20:24
**reserve** 27:18
**reserved** 26:21
**Resorts** 11:21 12:1

13:4,12,14,24
14:13,25 15:5,5,7
15:11,19 16:18,19
16:20 26:21 28:7
28:13,15,25,25
29:3 30:2,3 32:5
**respect** 16:5,25
17:15 26:2,3
**respectfully** 15:19
**respond** 24:20
**responded** 12:25
**response** 22:13
26:19
**responsibility** 24:16
24:20,24
**rest** 27:16,17
**restatement** 13:7
**result** 12:7,19 23:22
**resulting** 23:3
**retirement** 18:5
**reverse** 28:13
**Rex** 4:11 9:21
**RICARDO** 4:15
**Richard** 5:14 8:25
**Richards** 3:10 7:8
**right** 10:15,25 18:16
21:17 26:21 27:18
27:25
**roaming** 6:21
**Robert** 3:16 16:2
**Rodney** 3:12
**role** 10:16 29:20
**Rosner** 23:1
**rubric** 24:23
**Rule** 24:3
**run** 28:10 32:3

**S**

**S** 3:2 6:1
**safe** 16:21
**sale** 20:2
**Sam** 4:11 9:22
**Sarna** 5:2,7 9:6,9,9
9:9 26:13,14 27:8
27:11
**satisfied** 25:14

**satisfy** 20:23
**saying** 12:3
**says** 21:15 24:11
**scale** 17:23 23:16
**scheme** 23:10 31:6
**scope** 16:2
**seated** 6:3
**second** 25:17 26:8
27:18
**Section** 10:3 11:23
12:9,17 13:1 14:10
17:1,3 20:8 26:1
30:23 32:7
**securities** 12:10,12
12:12 13:2,10,25
14:3,19,20 28:18
29:15,16
**see** 7:4,6,15 8:20
29:21
**seek** 21:1
**seeks** 11:1
**seen** 25:6
**sell** 18:4 23:20
**seller's** 28:24
**selling** 11:7,8 30:20
**sent** 16:8,9
**separate** 16:24
24:10 25:7,8
**series** 17:21
**set** 6:16 17:16 28:7
**settlement** 12:8,11
12:18 13:2,9 28:8
28:21 29:2 32:4
**Seventh** 5:4
**Shapiro** 6:11 16:9
16:10
**share** 17:13
**shareholder** 11:9
**shareholders** 4:11
9:21 11:7 16:2,4,6
17:25 18:22 19:9
19:10,24 21:5,11
21:11,19,21 22:1,5
22:6 23:19,21 24:5
24:11,18 25:17
26:6 30:9,20

**shocked** 19:25
**shorthand** 21:16
**shortly** 6:14
**show** 21:4,20
**showing** 31:5
**shows** 21:8
**shrinking** 27:24
**side** 18:15,15
**sides** 18:19 25:7
**Signature** 33:10
**signed** 19:8
**similar** 7:16 13:14
14:15 17:13 19:5
**SIMON** 4:2
**simply** 20:7 24:22
25:12 27:17 30:24
31:6
**single** 7:10
**situation** 22:24
28:16
**six** 17:24 19:17
**sixties** 18:1
**small** 17:21
**sold** 28:18
**solely** 28:22 29:20
**solid** 20:3
**somewhat** 17:12
19:5
**soon** 19:8
**sooner** 7:1
**sorry** 30:18
**sort** 23:13
**sought** 12:2
**sound** 33:6
**so-called** 20:17
**SPEAKER** 32:17,18
32:19
**speaking** 17:8
**specific** 21:12 27:15
**specifically** 17:9,18
**spent** 19:16
**Square** 3:12
**stand** 32:15
**start** 8:7
**state** 5:11 24:12
25:18 32:11

**States** 1:2,14
**statute** 12:5,5,20,21
13:12 20:10,23
22:10,14,22 27:4
29:3 32:12
**statutory** 12:4 16:24
20:8 26:8
**Stearn** 3:16 7:3,4,7
7:8,13 8:1,6,12,15
8:19,20
**stock** 11:2,24,25
14:12,14,16 18:24
**stockbroker** 12:16
13:6
**stores** 15:3 22:25
**Street** 1:15 3:6,13
4:4,20 5:11
**stuck** 22:6
**style** 10:11
**submit** 16:17,19
17:6 26:1
**submitted** 31:10
**substantive** 17:17
**sufficient** 13:5 17:5
20:6 24:21,22
**suggest** 13:13 15:19
18:13
**suggesting** 25:3
**suit** 20:1
**summarize** 10:7,8
**summary** 25:25
**support** 16:6
**supposedly** 20:3,20
22:4,16
**sure** 16:9 20:9 26:24
**suspect** 17:10
**suspicion** 23:22
**synergies** 17:23
23:16
**system** 12:15 13:3

**T**

**T** 33:2,2
**tables** 25:8
**Tabor** 22:25
**take** 23:15 31:21

32:9
**taken** 29:4
**takes** 26:16
**talk** 23:7
**target** 20:17,19,21
  25:5,10 30:18
**telephone** 6:4
**TELEPHONICA...**
  3:8
**tell** 10:10 15:12 28:3
**telling** 10:9
**ten** 26:23
**tendered** 11:25
**Thank** 6:5 7:6 8:6
  8:18,19,20 9:3,4,5
  9:11,16,19,22,23
  9:25 10:1 15:22,23
  26:10,12,14 27:2,2
  27:12,20 30:20,21
  31:8,16 32:16,17
  32:18,19
**Thanks** 8:11
**theory** 24:13
**thing** 14:8 15:4
  26:18
**things** 6:25 12:24
  24:22,23 32:14
**think** 6:3,21 8:4,15
  10:9 13:19 15:11
  15:16 16:6,11,14
  17:12 27:21,23
  29:6,13,25 30:24
  31:21 32:11
**third** 11:22,22 13:4
  13:12,21 28:3,4,12
  28:14 30:2,11
**thought** 27:25
**three** 10:21 19:22
**thrown** 27:10
**time** 6:11,23 10:22
  13:22 14:1,1,6
  18:3,25 25:11,19
  25:21 26:19 32:20
**times** 6:15
**today** 7:1,10,22 8:2
  8:13 23:7 28:20

**told** 6:18 31:18
**total** 19:16
**totally** 18:8 24:10,19
**traded** 13:10 14:12
  28:18
**trading** 30:4
**transacted** 28:18
**transaction** 12:9,12
  12:21 17:10,16
  18:19 19:8 20:6,13
  22:4 23:3,18 28:19
  28:24 29:8
**transactions** 10:22
  11:1,4 14:23 16:22
  16:22 17:11,13
  18:9 22:3,17 23:22
  25:2
**Transcribed** 2:24
**transcriber** 33:4,10
**transcript** 33:5
**transfer** 11:4,25
  12:2,11 13:25
  14:14 20:11,12,13
  20:15,25 21:1,4
  25:16,19,22 28:23
  28:23 29:15,20
**transferred** 11:5,8
**transfers** 12:23
  22:11,15
**true** 8:2
**trustee** 2:3 3:4 4:3
  10:20 12:24 15:8
  17:7 20:5,20,22
  21:4 22:2,6 23:5
  23:12,13 24:11,15
  24:21 25:1,13
  26:20
**trustee's** 14:5 20:18
  22:12,13 25:20
  26:2,19 28:11
**try** 10:7 23:24 24:20
**trying** 31:21
**turn** 8:15 27:22
**two** 11:12 16:7,7

**U**

**understand** 6:12
  25:8 29:3,25
**undisputed** 17:15
**Undoubtedly** 17:21
**unfortunately** 28:11
**United** 1:2,14
**use** 18:5
**U.S** 1:23

**V**

**value** 20:12
**variety** 16:3
**various** 7:13 20:21
  21:10 22:17 24:7
  26:19
**veil** 25:4,12
**venture** 17:19
**versus** 13:16
**vice** 8:25
**view** 11:23 31:2,25
**violet** 27:24
**virtue** 11:4
**visiting** 6:11,22

**W**

**Wagner** 3:23 8:7,9
  8:11,12 9:23,25
  10:2,6,15 11:1,15
  11:17 13:18 15:22
  15:23 16:5,8 18:25
  19:14
**Wagner's** 16:16
  23:6
**Walrath** 14:9 29:4,6
**want** 26:24 28:12
  32:6,9
**WARDWELL** 3:18
**warranted** 15:21
**wasn't** 19:19,21 23:5
**way** 17:10 19:6
  29:17
**ways** 21:23
**weeks** 28:2
**Welcome** 6:3 8:9 9:2
  9:11
**well-heeled** 18:5
**went** 11:10 12:7

14:21 16:10,15
  18:17,21
**weren't** 24:16
**Western** 14:17
**we'll** 7:22 32:15
**we're** 7:18,20,21
  27:11
**we've** 7:16 8:24 15:3
  16:7 27:10,21
  32:13
**Wieboldt** 13:17,18
  22:25
**William** 2:3 3:4 4:3
**WILMER** 5:9
**Wilmington** 1:16
  3:14 4:6,14,22
**wire** 11:4 28:23
  29:20
**wish** 6:25 30:7,10
**words** 20:14
**work** 6:19 27:25
  31:15
**working** 6:13
**wouldn't** 11:14
**writing** 32:1
**written** 13:11 31:22
**wrong** 27:25 29:6

**X**

**x** 1:5,12

**Y**

**Yeah** 18:10
**years** 10:22 19:22
**York** 3:21 5:5
**Yourtz** 12:23
**Yucaipa** 13:16

**Z**

**Zeitlin** 16:3 26:9

**0**

**02108** 3:7
**02109** 5:12
**03-11489** 1:4
**05-50692** 7:14
**08853** 21:15

| | |
|---|---|
| **08872** 21:20 | **546** 12:17 29:11 |
| **08898** 21:24 | **546(e)** 10:3 11:18,24 |
| |   12:9 13:1 14:5,10 |
| **1** |   14:14,22 15:8,12 |
| **100,000,000** 19:16 |   16:5,17,24 17:4 |
| **10017** 3:21 |   26:1 28:8,9 29:8 |
| **10106** 5:5 | **551** 4:21 |
| **10122** 29:13 | |
| **11** 19:23 | **6** |
| **1150** 4:13 | **6** 20:18 |
| **12** 1:18 | **60** 5:11 |
| **12,000,000** 18:23 | **69** 20:16 |
|   21:18,22,25 | |
| **1304** 30:9 32:7 | **7** |
| **1304(a)** 17:1,3,7 | **7** 3:4 4:3 |
|   20:9,14 30:23 | **73** 21:20 |
| **1313** 4:20 | **741** 29:18 |
| **1380** 4:5 | |
| **19801** 3:14 | **8** |
| **19899** 4:14,22 | **8(f)** 25:16 |
| **19899-1380** 4:6 | **844** 1:15 |
| **1999** 17:18 | **888** 5:4 |
| | **8899** 21:24 |
| **2** | |
| **2000** 10:17,19 17:19 | **9** |
|   18:19 19:9,14,18 | **9(b)** 24:3 |
| **2001** 19:19 | **913** 4:4 |
| **2003** 19:21 | **920** 3:13 |
| **2007** 1:18 33:9 | |
| **21** 33:9 | |
| **25,000,000** 18:20 | |
| **27** 22:2 | |
| **28** 24:12 | |
| | |
| **3** | |
| **3** 26:24 | |
| **3:00** 1:19 | |
| **3:40** 32:20 | |
| **32** 17:18 | |
| **37** 17:18 | |
| | |
| **4** | |
| **450** 3:20 | |
| **46** 20:16 | |
| | |
| **5** | |
| **500** 4:12 | |