IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| PLASSEIN INTERNATIONAL CORP., *et al.* (n/k/a PL Liquidation Corp.), | ) ) ) | Bankr. Case. No. 03-14489-KG Jointly Administered |
| Debtors. | ) ) ) | Adv. Proc. No. 05-50692-KG |
| WILLIAM BRANDT, as he is the Trustee of the Estates of Plassein International Corp., *et al.*, | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | C.A. No. 07-345-JJF |
| B.A. CAPITAL CO. LP, *et al.*, | ) ) ) | |
| Appellees. | ) ) ) | |

## ANSWERING BRIEF OF APPELLEE SAM CHEBEIR

ASHBY & GEDDES
William P. Bowden (#2553)
Ricardo Palacio (#3765)
Andrew D. Cordo (#4534)
500 Delaware Ave. 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Appellee Sam Chebeir*

Dated: March 10, 2008

## <u>TABLE OF CONTENTS</u>

Preliminary Statement And Summary Of Argument .......................................... 1

Nature And Stage Of The Proceedings ...................................................... 3

Facts ................................................................................ 5

Argument ............................................................................ 8

    I.    Section 546(e) Bars Avoidance Of Any Transfer To Mr.
        Chebeir ....................................................................... 8

        A.    The Transfer From Packaging To Mr. Chebeir Was A.
            Settlement Payment............................................................ 9

            1.    The Third Circuit's Decision in *Resorts
                International* Is Dispositive Here........................................... 9

            2.    The Authority Relied Upon By The Trustee
                Cannot Be Reconciled With *Resorts
                International* And Is Not Persuasive..................................... 13

        B.    The Transfer From Packaging To Mr. Chebeir Was
            Made By A Financial Institution...................................... 17

    II.    The Complaint Fails To State A Claim Against Mr. Chebeir
        For Fraudulent Conveyance ...................................................... 18

        A.    The Trustee Cannot Supplement The Complaint Now
            To Cure The Failure To Allege A Transfer By A
            Debtor............................................................... 20

        B.    The Transactions Should Not Be Collapsed. ................................. 21

            1.    The January Acquisitions And The Rex
                Acquisition Were Not A Single, Unified
                Transaction And The Parties Did Not Consider
                Them Such. ........................................................ 21

            2.    In The Absence Of Allegations Of Bad Faith Or
                Intent To Defraud, The Transactions Cannot Be
                Collapsed........................................................... 23

Conclusion ......................................................................... 26

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page</u>

*Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer Savings & Loan
        Ass'n*, 878 F.2d 742 (3d Cir. 1989) .................................................................. 9, 11

*Brandt v. B.A. Cap.Co. LP (In re Plassein Int'l Corp.),*
        366 B.R. 318 Bankr. D. Del. 2007) (opinion below ................................................ 3

*China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*,
        788 F.Supp. 815 (D. Del. 1992) ............................................................................ 18

*Conley v. Gibson,* 355 U.S. 41 (1957).................................................................................. 8

*Bell Atl. Corp. v. Twombly,* -- U.S. --, 127 S.Ct. 1955 (2007) ............................................ 8

*HBE Leasing Corp. v. Frank,* 48 F.3d 623 (2d Cir. 1995).................................................. 23

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ................... 8, 24

*Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.),*
        952 F.2d 1230 (10th Cir. 1991) ........................................................................*passim*

*Loranger Mfg. Corp. v. PNC Bank (In re Loranger Mfg. Corp.),*
        324 B.R. 575 (Bankr. W.D. Pa. 2005)............................................................... 12, 18

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l),*
        181 F.3d 505 (3d Cir.), *cert denied sub nom. Sun Int'l N.Am., Inc. v.
        Lowenschuss*, 528 U.S. 1021 (2005) ................................................................*passim*

*Metro Comm. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
        854 A.2d 121 (Del. Ch. 2004) .............................................................................. 24

*Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997) ................................. 24

*Munford v. Valuation Research Corp.*, 98 F.3d 604 (11th Cir. 1996) ............................. 17

*Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.),*
        344 B.R. 340 (W.D. Pa. 2006) ..........................................................................*passim*

*Official Cmtee. Of Unsecured Creds. v. Acres of Diamonds, L.P. (In re the
        IT Group, Inc.)*, 359 B.R. 97 (Bankr. D. Del. 2006) ........................................ 11, 12

*Official Cmtee. Of Unsecured Creds. of Hechinger Inv. Co. of Del., Inc. v.*
*Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*,
274 B.R. 71 (D. Del. 2002) ............................................................................*passim*

*Official Committee of Unsecured Creditors of Norstan Apparel Shops, Inc.*
*v. Lattman (In re Norstan Apparel Shops, Inc.)*,
367 B.R. 68 (Bankr. E.D.N.Y. 2007) ...........................................................*passim*

*Pension Ben. Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993) ................................................................... 20

*QSI Holdings, Inc. v. Alford*,
-- B.R. --, 2007 WL 4557855 (W.D. Mich. Dec. 21, 2007) ..........................*passim*

*TWA Inc. Post-Confirmation Estate v. Marsh USA, Inc. (In re TWA Post-*
*Confirmation Estate)*, 305 B.R. 228 (Bankr. D. Del. 2004) ................................ 20

*U. S. v. Tabor Ct. Realty Corp.*, 803 F.2d 1288 (3d Cir. 1986) ................................ 22, 25

*U.S. v. Doe*, 980 F.2d 876 (3d Cir. 1992) ............................................................10

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*,
919 F.2d 206 (3d Cir. 1990) ........................................................................ 23, 25

*Weiboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655 (N.D. Ill. 1991) ...................... 15, 16

*WESI, LLC v. Compass Env'l, Inc.*, 509 F.Supp.2d 1353 (N.D. Ga. 2007) ..................... 24

*Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651 (3d Cir. 2003) ......................................... 8

*Zahn v. Yucaipa Cap. Fund*, 218 B.R. 656 (D.R.I. 1998) ..........................................*passim*

Statutes

6 *Del. C.*

§ 1304 ......................................................................................................18-19
§ 1305 ........................................................................................................ 19

11 U.S.C.

§ 101 ............................................................................................................ 17
§ 544 ............................................................................................................. 9
§ 546 ....................................................................................................*passim*
§ 741 ......................................................................................................... 9, 14

Other Authority

Edward R. Morrison & Joerg Riegel, *Financial Contracts And The New Bankruptcy Code: Insulating Markets From Bankrupt Debtors And Bankruptcy Judges*, 13 ABI L. REV. 641 (2005) ...........................................11, 17

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

The pertinent allegations against Appellee Sam Chebeir can be summarized in a single sentence.  In an arm's length transaction, Mr. Chebeir sold his stock in Plastical Industries, Inc. ("Plastical") in exchange for cash, which cash was paid to him by a financial institution via a wire transfer.

The acquisition of Mr. Chebeir's stock in Plastical, and with it, the acquisition of Plastical itself (the "Plastical Acquisition"), was part of an aggressive acquisition strategy undertaken by Plassein International, Inc. ("Plassein"), under which Plassein allegedly acquired a number of businesses using leveraged buy outs.  Plassein was evidently unable to keep up with the payments on the debt that it incurred, and about three years after the acquisitions, Plassein filed for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1]

By the Complaint, filed in 2005, William Brandt, the Chapter 7 Trustee of Plassein (the "Trustee") seeks to retrade the Plastical Acquisition and have Mr. Chebeir (among others) foot the bill for Plassein's failure.[2]  Specifically, the Trustee seeks to avoid and recover the payments made to Mr. Chebeir, contending that the Plastical Acquisition— and the payments made thereunder—amounted to a fraudulent transfer.  The Complaint fails as a matter of law, however, in two significant respects.

---

[1] Citations to "Section __" herein refer to sections of the Bankruptcy Code, unless otherwise indicated.

[2] The Complaint is attached as Exhibit B to the Appellant's Appendix (D.I. 9) (the "Appendix").

First, the payment made to Mr. Chebeir was a "settlement payment" under Section 546(e). The Third Circuit definitively ruled on this question, holding that a leveraged buyout payment for the purchase of securities, executed though a financial institution, cannot be avoided under Section 546(e). *Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l)*, 181 F.3d 505, 515 (3d Cir.), *cert denied sub nom. Sun Int'l N.Am., Inc. v. Lowenschuss*, 528 U.S. 1021 (2005) (hereinafter, "*Resorts Int'l*").

Second, the Complaint fails to plead a claim for fraudulent transfer under the Delaware Fraudulent Transfer Act (the "DFTA"). The DFTA requires that the plaintiff allege that a debtor made a fraudulent transfer, and that it was rendered insolvent by a transfer. Here, the Complaint does not allege a transfer by any debtor. Nor does the Complaint allege that Plastical was rendered insolvent thereby. Opposing dismissal, the Trustee nevertheless argues that Plassein's entire M&A strategy, and the transactions made thereunder, should be "collapsed" and considered a single transaction. The transfer to Mr. Chebeir, so the argument goes, should be viewed as one and the same with the various transactions that allegedly rendered Plassein insolvent. There is no basis, legal or factual, to do so. Accordingly, the Complaint fails to state a claim against Mr. Chebeir for fraudulent transfer.

Because the Trustee's claims against Mr. Chebeir fail as a matter of law, this Court should affirm the decision below dismissing the Complaint.

## NATURE AND STAGE OF THE PROCEEDINGS

On April 1, 2005, the Trustee filed the Complaint seeking to avoid and recover certain allegedly fraudulent transfers made in 2000 in connection with Plassein's acquisition strategy. All of the defendants moved to dismiss the Complaint in June 2005. (Appx. Exs. C-G). The parties completed briefing on those motions in August 2005, and the Bankruptcy Court held oral argument before Judge Walter Shapero on September 30, 2005. On April 12, 2007, the motions were reargued at the request of Judge Kevin Gross, to whom the case had been reassigned. On April 20, 2007, the Bankruptcy Court entered an opinion, *Brandt v. B.A. Cap. Co. LP (In re Plassein Int'lCorp.)* 366 B.R. 318 (Bankr. D. Del. 2007) and final order, granting the motions to dismiss on two alternative grounds. (Appx. Exs. J-K).[3]

First, the court held that the subject transfers were "settlement payments" under Section 546(e), reasoning that the challenged transactions were "indistinguishable" from the LBO payments held unavoidable in *Resorts International*. *Brandt*, 366 B.R. at 323. The court rejected the Trustee's attempt to limit *Resorts International* to transactions involving "public companies," because that the Third Circuit had never so limited *Resorts International*, and had, in contrast, said its definition of Section 546(e) should apply regardless of whether the securities in question were publicly traded. (*Id*. at 324).

Second, the court held that the Complaint failed to state a claim under the DFTA because the Complaint failed to allege a transfer by a debtor. *Id*. at 326. The Trustee

---

[3] Because all of the defendants' motions to dismiss raised "essentially identical" arguments, the Bankruptcy Court decided them together. *Brandt*, 366 B.R. at 320.

3

attempted to avoid that conclusion by arguing the transactions at issue should be collapsed, but the court held that it would be inappropriate to do so because the Complaint does not allege intent to defraud or bad faith. *Id.*

On April 27, 2007, the Trustee filed a notice of appeal of the order of dismissal. (Appx. Ex. L). On February 14, 2008, the Trustee filed his opening brief (D.I. 8) (the "Opening Brief"). This is Mr. Chebeir's answering brief.

## FACTS

Pursuant to a purchase agreement, Plassein Packaging Corp. ("Packaging") purchased all of Mr. Chebeir's shares of Plastical on January 10, 2000 for $2,046,364.39 (the "Consideration"). (Appx. Ex. B at A29 ¶ 28, A31 ¶¶ 39, 40, A56 ("At closing, [Packaging] shall cause to be transferred a total of $2,046,364.39, in immediately available funds, to Sam Chebeir")). Packaging's payments for Mr. Chebeir's stock were effected by a wire transfer from its bank, Fleet Bank, to Mr. Chebeir's bank, Bank of America. (*Id*. at A60).

According to the Complaint, the Plastical Acquisition was part of a plan commenced in 1999 whereby Plassein intended to acquire a number of manufacturers of flexible packaging or specialty film. (*Id*. at A28-29 ¶ 27). The acquisitions were accomplished through a series of several leveraged buyouts ("LBO"). In the first stage of the acquisitions, of which the Plastical Acquisition was a part, Packaging purchased the stock of four entities in arm's length transactions in January 2000 (together, the "January Acquisitions"). (*Id*. at A29 ¶¶ 28-31). At the time of the January Acquisitions, Plastical had a positive net worth. (*See id*. at A120). Because the Complaint does not allege that Plastical (or any other debtor, for that matter) transferred anything to anyone in connection with the Plastical Acquisition, the Complaint provides no basis to conclude that Plastical's net worth was any different immediately following the Plastical Acquisition. (*See id.* (post-acquisition balance sheet showing assets in excess of liabilities)).

Six months after closing the January Acquisitions, Plassein and its new

5

subsidiaries entered into loan and security agreements under which the financing for the acquisitions was secured against the assets of the January Acquisitions.  (*Id*. at A29-30 ¶¶ 33-34).  The Trustee alleges, in conclusory fashion, that Plassein's decision to saddle the January Acquisitions with its debt in June 2000 rendered them insolvent.  (*Id*. at A33-34 ¶¶ 46-47).

The second stage of Plassein's strategy involved the acquisition of Rex International, Inc. ("Rex"), which closed in August 2000 (the "Rex Acquisition").  (*Id*. at A34 ¶ 52).  At the time of closing, Rex had a positive net worth.  (*Id*. at A35 ¶ 56, A157).  On some unspecified post-acquisition date, Rex was added as a borrower under Plassein's loan agreements, and its assets were encumbered, along with those of the January Acquisitions, to secure Plassein's debt.  (*Id*. at A34 ¶ 49).  Plassein also committed Rex to incur additional indebtedness.  (*Id*. ¶ 50).  The Trustee alleges, again in conclusory fashion, that Plassein's decisions in this regard rendered Rex insolvent.  (*Id*. at A36 ¶¶ 58-61).

Following the January Acquisitions and the Rex Acquisition, Plassein was unable to meet its obligations to its lenders and, about 14 months later, was in default of those obligations.  (*Id*. ¶ 62).  Plassein twice sought and obtained amendments to its agreements with its lenders, but was still unable to keep up with its financial commitments.  (*Id*. ¶¶ 62-64).  The Complaint does not explain why Plassein was unable to meet its obligations.  However, whether it was because Plassein bit off more debt than it could

chew, or poor management,[4] or changing financial conditions in the years that followed the acquisitions, Plassein was forced to seek protection under the Bankruptcy Code on May 14, 2003—more than three years after the Plastical Acquisition.  (*Id*. at A37 ¶ 65).

Based upon the foregoing, the Trustee seeks to collapse the discrete aspects of Plassein's acquisition strategy and avoid the transfer of the Consideration to Mr. Chebeir as fraudulent (*id*. at), though Mr. Chebeir was not involved in Plassein's post-acquisition activities.  For the reasons that follow, the Trustee's theory must fail on at least two separate grounds: (i) the Trustee's purported fraudulent transfer claims are barred by Section 546(e); and (ii) the allegations of the Complaint fail as a matter of law to state a claim for fraudulent transfer.

---

[4] Indeed, it is undisputed that all of the acquisitions were solvent when they were acquired.  (*Id*. at A33 ¶ 44, A36 ¶ 56).

## ARGUMENT

This court should review the Bankruptcy Court's decision granting Mr. Chebeir's motion to dismiss *de novo*. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003) ("A motion to dismiss for failure to state a claim is reviewed *de novo*"). While all of the well-pled allegations of the Complaint must be accepted as true at the motion to dismiss stage, *id.*, "boilerplate and conclusory allegations [of fraud] will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (internal citation omitted).[5]

## I.    SECTION 546(e) BARS THE AVOIDANCE OF ANY TRANSFER TO MR. CHEBEIR.

The transfers that the Trustee seeks to avoid, namely the payment of the Consideration by Packaging to Mr. Chebeir, were "settlement payments" made via wire transfer by Fleet Bank and, therefore, are unavoidable under Section 546(e). Ordinarily, Section 544(b) authorizes the Trustee to "avoid any transfer of interest of the debtor . . . that is voidable under applicable law." However, this power is limited by Section 546(e), which provides that, notwithstanding Section 544, "the trustee may not avoid a transfer

---

[5] The Trustee relies upon *Conley v. Gibson*, 355 U.S. 41, 45 (1957) for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (Op'g Br. at 10). *Conley* has been overruled. *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955 (2007). Rather, to survive a motion to dismiss, a plaintiff must allege facts that demonstrate more than a mere speculative possibility that he would be entitled to relief. Indeed, "*once a claim has been stated adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (emphasis added). While *Twombly* does not drastically alter the law of pleading, it requires that a plaintiff plead more than a mere recitation of the elements of the cause of action in order to survive a motion to dismiss. *Id.*

that is a . . . settlement payment as defined by [S]ection 101 of 741, made by or to a . . . financial institution."  11 U.S.C. § 546(e).  As such, Section 546(e) sets forth a two-part test in order for transfers to be exempt from avoidance: the transfer must be (i) a settlement payment; and (ii) made by or to a financial institution.

### A.    The Transfer From Packaging To Mr. Chebeir Was A Settlement Payment.

#### 1.    The Third Circuit's Decision In *Resorts International* Is Dispositive Here.

The first prong of the settlement payment exception requires that the transfers in question must be "settlement payments."  Section 741 defines "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade."  11 U.S.C. § 741.  Following the plain language of this definition, Third Circuit concluded that "[i]n the securities industry, a settlement payment is generally the transfer of cash or securities made to complete a securities transaction."  *Resorts Int'l*, 181 F.3d at 515.  This definition is "extremely broad" and encompasses "almost all" securities transactions.  *Id.* (quoting *Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer Savings & Loan Ass'n*, 878 F.2d 742, 751 (3d Cir. 1989)).  Moreover, the definition of settlement payment, though broad and largely unrestricted, is unambiguous, meaning the court need not inquire into extrinsic considerations such as Congressional intent and legislative history.  *Id.*; *see also QSI Holdings, Inc. v. Alford*, -- B.R. --, 2007 WL 4557855, at *8 (W.D. Mich. Dec. 21,

2007) (holding that Section 546(e) is not ambiguous just because it is broad).[6]

In *Resorts International*, 181 F.3d at 515, the Third Circuit held that payment to a shareholder for his shares as part of a LBO is "obviously a common securities transaction" and, therefore, a settlement payment under Section 546(e). *See also Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.)*, 952 F.2d 1230, 1239-40 (10th Cir. 1991) (cited with approval in *Resorts International* for the proposition "that payments to shareholders as part of an LBO [are] 'settlement payments'"); *Official Cmtee. Of Unsecured Creds. of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 87 (D. Del. 2002) (hereinafter, "*Hechinger*") (following *Resorts International* and holding that payment for shares of stock was an unavoidable settlement payment). There, after Resorts International filed for Chapter 11 protection, the Trustee sought to recover LBO wire transfers allegedly mistakenly made to a shareholder. *Resorts Int'l*, 181 F.3d at 509. The Court held that the LBO wire transfer, which involved two banks, was, "under a literal reading of [S]ection 546[e], . . . a settlement payment 'made by a financial institution'" even though no securities clearing agency was involved. *Id.* (the court's alterations omitted). Moreover, Section 546(e) contains no language distinguishing publicly traded from privately held

---

[6] Where, as here, the statute in question is not ambiguous and does not lead to an absurd result, *Resorts Int'l*, 181 F.3d at 515-16, the Court's analysis of the statute is limited to its plain language. *U.S. v. Doe*, 980 F.2d 876, 877 (3d Cir. 1992) ("There is no need to resort to legislative history unless the statutory language is ambiguous"). The Trustee concedes that "[t]he Third Circuit . . . has been clear that it will not allow legislative history and policy considerations to override a statute's plain language." (Op'g Br. at 21). Paradoxically, however, the Trustee's arguments in the Opening Brief rely heavily upon the legislative history of Section 546(e). (*See id.* at 15-18 (section entitled "The Legislative History Of § 546(e) . . ."); *see also id.* at 25 (criticizing authority for not relying upon Section 546(e)'s legislative history)).

stock, and the Third Circuit refused to read in any such distinction. *Official Cmtee. Of Unsecured Creds. v. Acres of Diamonds, L.P. (In re the IT Group, Inc.)*, 359 B.R. 97, 101 (Bankr. D. Del. 2006) (hereinafter, "*IT Group*") (citing *Resorts Int'l*, 181 F.3d at 514-17); *see also QSI Holdings*, 2007 WL 44557855, at *7 (noting that "nothing in the plain language of the statute limits the application of the [Section 546(e)] exception to public transactions"). Put simply, in the absence of intent to defraud,[7] the protections of Section 546(e) should be extended to *any* settlement payment. *Bevill*, 878 F.2d at 751; *cf.* Edward R. Morrison & Joerg Riegel, *Financial Contracts And The New Bankruptcy Code: Insulating Markets From Bankrupt Debtors And Bankruptcy Judges*, 13 ABI L. REV. 641, 662 (2005).

In reaching its decision, the Third Circuit relied upon the Tenth Circuit's decision in *Kaiser Steel*. *Resorts Int'l*, 181 F.3d at 515. There, the court held that "the exchange of stock for consideration in an LBO" was a settlement payment under Section 546(e). *Kaiser Steel*, 952 F.2d at 1239-40. Importantly, the Tenth Circuit saw no reason to treat stockholders who tendered into an LBO any differently than stockholders who sold on the open market. *Id.* at 1240. The Court refused to cabin Section 546(e) to "routine" securities transactions or sales on an exchange in holding an LBO was a settlement payment. *Id.* at 1239. In following *Kaiser Steel*, the Third Circuit dismissed criticism of *Kaiser Steel* that it went beyond the intended scope of Section 546(e), holding that the plain language of the statute mandates the conclusion that, although LBO payments are

---

[7] The Trustee conceded that he does not allege that the defendants committed actual fraud. (Brandt at 326).

not the *most* common securities transaction, there is nothing absurd about concluding that an LBO is a "common securities transaction" for the purposes of the statute. *Resorts Int'l*, 181 F.3d at 516 & n.10.

Following *Resorts International*, several recent cases (in addition to the opinion below) have held that Section 546(e) bars the avoidance of any LBO payments made via wire transfer. *QSI Holdings*, 2007 WL 4557855, at *1 (affirming the dismissal of a fraudulent transfer claim in which plaintiffs sought to recover transfers via a bank made to purchase stock in an LBO, holding Section 546(e) is not ambiguous, and adopting the "broad[]" view articulated in *Resorts International*, *Kaiser Steel*, and *IT Group*); *Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 344 B.R. 340, 365-66 (W.D. Pa. 2006) (concluding, after an extensive analysis of *Resorts International* and a number of other cases, that a buyout of privately-held stock was a settlement payment under Section 546(e)); *IT Group*, 359 B.R. at 101 (granting summary judgment against a fraudulent transfer claim, holding that *Resorts International* is controlling on the question whether a payment made via wire transfer for the purchase of stock was an unavoidable settlement payment under Section 546(e)); *Hechinger*, 274 B.R. at 86 (holding that *Resorts International* stands for the proposition that "[S]ection 546(e) is generally applicable to LBO transactions" and therefore dictated that claims seeking recovery of payments made for shares in an LBO had to be dismissed); *see also Loranger Mfg. Corp. v. PNC Bank (In re Loranger Mfg. Corp.)*, 324 B.R. 575, 585-86 (Bankr. W.D. Pa. 2005) (holding that an LBO payment sent by wire transfer was a settlement payment by a financial institution and therefore unavoidable pursuant to Section 546(e)). *Resorts International* thus stands

12

firmly for the proposition that a payment made for shares in connection with an LBO is a "settlement payment" under Section 546(e), without regard to whether the acquired company is publicly traded.

### 2.    The Authority Relied Upon By The Trustee Cannot Be Reconciled With *Resorts International* And Is Not Persuasive.

Evidently recognizing that *Resorts International* is dispositive on the issue presented on this appeal, the Trustee attempts to distinguish it.  The thrust of the Trustee's argument is that Section 546(e) applies only to publicly traded securities.  However, the language of Section 546(e) contains no such limitation.  And nothing in the cases cited by the Trustee as limiting Section 546(e)'s application can be reconciled with the mandate of *Resorts International*.  Therefore, the Bankruptcy's Court's decision must be affirmed.  *See Hechinger*, 274 B.R. at 86 (observing that, unless it could be distinguished, *Resorts International* mandates dismissal of claims to recover LBO settlement payments).

In support of his argument, the Trustee relies upon *Official Committee of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman (In re Norstan Apparel Shops, Inc.)*, 367 B.R. 68 (Bankr. E.D.N.Y. 2007) (hereinafter, "*Norstan*").  (Op'g Br. at 11).  There, the court considered whether a payment to stockholders made in connection with an LBO of a closely held corporation was a settlement payment.  It began its analysis with the conclusion that the definition of "settlement payment" was "unhelpfully circular" and resorted to an analysis of legislative history and intent.  *Id*. at 76.  Considering the purpose of Section 546(e), as well as the extent to which the transaction

at issue implicated the clearance and settlement system of the public securities markets, the court concluded that the LBO payments before it did not fall within the Section 546(e) safe harbor because they "did not involve publicly traded securities or otherwise implicate the public securities markets . . . ." *Id.* at 76-77.  Without so much as a cursory analysis of *Resorts International*, the court described decisions contrary to its own holding as "anomalous" or "absurd." *Id.*

*Norstan* cannot be reconciled with the controlling precedent of *Resorts International*.  *Norstan* held that Section 546(e) is ambiguous, and premised its analysis on the history and what it concluded was the purpose of Section 546(e).  However, the Third Circuit held that Section 546(e) is not ambiguous and, in any event, expressly rejected the authority and the statutory construction upon which *Norstan* relied.  *Resorts Int'l*, 181 F.3d at 515 (discussing and rejecting *Zahn v. Yucaipa Cap. Fund*, 218 B.R. 656, 675 (D.R.I. 1998)).  Moreover, *Norstan*'s interpretation of the statute hinged on the phrase "commonly used in the securities trade" set forth in Section 741(8), a phrase that which the *Norstan* Court concluded must mean "public securities market." *Norstan*, 367 B.R. at 76.  In contrast, the Third Circuit refused to infer any such limitation.  Instead, the Third Circuit premised its holding on Section 546(e)'s plain language, and held that payments made to stockholders in LBOs were included because they are "common securities transaction[s]." *Resorts Int'l*, 181 F.3d at 515.  And unlike *Norstan*, the Third Circuit also expressly rejected any need for the involvement of a clearing agency or "the

system of intermediaries or guarantees" employed in the public trade of securities. *Id.*[8]

To the extent that the Trustee relies upon *Zahn* and *Weiboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655 (N.D. Ill. 1991), that reliance is also misplaced. *See Resorts Int'l*, 181 F.3d at 515. *Zahn* and *Weiboldt* (and *Nortsan*, for that matter) each concluded that the statutory definition of settlement payment "lacks plain meaning." That proposition (and conclusion) is directly at odds with the Third Circuit's conclusion in *Resorts International*. *Nat'l Forge*, 344 B.R. at 363-64. Moreover, the Trustee states that "*Resorts* appropriately rejected the policy-based and legislative history-based decisions of *Zahn* and *Wieboldt*." (Op'g Br. at 22). Thus, by his own admission, the Trustee acknowledges the flawed holdings in each of those cases. Nevertheless, the Trustee goes so far as to suggest that the "Third Circuit rejection of *Zahn* and *Wieboldt* does not resolve this case." (*Id.* at 21). *Resorts International* cannot be read in the unusual manner that the Trustee urges:

> Under a literal reading of [S]ection 546, therefore, this [LBO payment] was a settlement payment "made by a financial institution.
>
> A number of district courts have held that the term "settlement payment" does not include payments made for shares of a corporation as part of an LBO. [Citing *Zahn* and *Weiboldt*]. The reasoning of these courts is essentially that "the system of intermediaries and guarantees that normal securities transaction involve is not in play in an LBO. [Citing *Zahn*].

---

[8] This court has similarly rejected attempts to engraft limitations on Section 546(e) not found in the language of the statute. *See Hechinger*, 274 B.R. at 87 (refusing to draw a distinction based upon insider status).

> The only other courts of appeals to address this question,
> however, . . . held that the payments to shareholders as part of
> an LBO were "settlement payments" under the statute . . . . A
> payment for shares during an LBO is obviously a common
> securities transaction, and we therefore hold that it is also a
> settlement payment for the purposes of [S]ection 546(e).

*Resorts Int'l*, 181 F.3d at 515 (citations, footnote and the court's alterations omitted).[9]

The Third Circuit thus squarely rejected *Zahn* and *Weiboldt*, and nothing in *Resorts*

*International* can be read to carve out the publicly-traded securities restriction the Trustee

now advances.

     *Nortsan*, *Zahn*, *Weiboldt* and the Trustee also rely, erroneously, upon judgments

about whether exempting under Section 546(e) certain transactions from avoidance

would advance the purpose of protecting the securities industry from a cascade of

bankruptcies precipitated by the avoidance of trades caused by one market participant's

bankruptcy.  *See*, *e.g.*, *Weiboldt*, 131 B.R. at 664 (concluding that exempting LBOs of

privately held securities would not advance such a purpose); (Op'g Br. at 16-17); *but see*

*QSI*, 2007 WL 4557855, at *8 (holding that "plaintiffs provide no support for their

contention that applying the [Section 546(e)] exemption [to an LBO of privately traded

stock] does not . . . promote stability in the financial and securities markets.  Given the

multitude of shareholders in involved in this case, many of whom likely reinvested the

proceeds, it is questionable whether the undoing of the hundreds of transactions would

---

     [9] Even if it was just a policy-driven "mode" of analysis that the Third Circuit rejected, as the Trustee suggests, the Trustee's argument still fails because the same "mode" was used in *Norstan*, and is advanced throughout the Trustee's argument.  *See Norstan*, 367 B.R. at 76 (stating that "the term 'settlement payment' must be understood in light of [Congress'] purpose"); (Op'g Br. at 15-18, 21 (discussing the Congressional intent and purpose of Section 546(e))).

not cause some disruption in the securities market"). *Resorts International* makes such difficult judgments unnecessary, however, as it held that Section 546(e) applies regardless of whether the securities clearance system is implicated by an LBO. *Resorts Int'l*, 181 F.3d at 515. In essence, the Third Circuit has held that the form over the substance of the transaction is important to the analysis under Section 546(e)—which makes sense—given the difficulty of making hypothetical judgments about the effect a transaction might have on the well-being of the securities industry. *See* Morrison & Riegel, *supra*, 13 ABI L. REV. at 663-64.

### B. The Transfer From Packaging To Mr. Chebeir Was Made By A Financial Institution.

The transfer of Consideration from Packaging to Mr. Chebeir via Fleet Bank satisfies the second prong of the Section 546(e) analysis. "So long as a financial institution is involved, the payment is an unavoidable 'settlement payment.'" *Hechinger*, 274 B.R. at 87. The term "financial institution" is defined as "a Federal reserve bank or an entity . . . that is a commercial or savings bank . . . when any such Federal reserve bank . . . or entity is acting as agent or custodian for a customer in connection with a securities contract." 11 U.S.C. § 101(22)(i). There is no requirement that the bank obtain a beneficial interest in the funds being transferred, or that it act as more than an intermediary in the transaction. *Resorts Int'l*, 181 F.3d at 516 (rejecting *Munford v. Valuation Research Corp.*, 98 F.3d 604 (11th Cir. 1996)).

This requirement is satisfied when an LBO payment is made by wire transfer. *Resorts Int'l*, 181 F.3d at 515. Indeed, federal regulations *require* that a wire transfer be

performed by a bank; a wire transfer thus *must* be made through a financial institution. *See Loranger*, 324 B.R. at 585-86 (taking judicial notice of federal regulation requiring that a wire transfer must be accomplished by a bank, rejecting plaintiffs' arguments that bank's involvement was "mere facilitation" and holding that debtor's leveraged buyout of defendant's shares was a "settlement payment" under § 546(e) because payment was made by wire transfer).

*    *    *

In sum, the Rex Acquisition is indistinguishable from the LBO stock purchases held to be unavoidable in *Resorts International* and its progeny. Therefore, the Bankruptcy Court correctly held that the Complaint must fail as a matter of law under Section 546(e).

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. CHEBEIR FOR FRAUDULENT CONVEYANCE.

The Trustee alleges fraudulent conveyance under the DFTA. The relevant statutes permit avoidance of conveyances made without fair consideration, or which render the transferor insolvent, or which leave the transferor with an unreasonably small amount of property. *China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 788 F.Supp. 815, 818 (D. Del. 1992).[10] Under each of those statutes, the Trustee must allege that: (i) a debtor made

---

[10] The first of the statutes relied upon by the Trustee provides, in pertinent part, that:

> (a)    A transfer made or obligation incurred *by a debtor* is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if *the debtor* made the transfer or incurred the obligation: . . .

18

a transfer (ii) for less than reasonably equivalent value and (iii) the debtor was, or was rendered insolvent, thereby.  The Trustee has not alleged facts sufficient to establish these elements.

The Complaint alleges that the transfer to Mr. Chebeir was made by Packaging. Since the Complaint does not allege that a *debtor* made a transfer, the Complaint fails on its face to state a claim under the DFTA.  Likewise, the Complaint fails to state a claim that any *debtor* was rendered insolvent by, left with insufficient assets after, or provided excessive consideration in, a transfer, particularly because it alleges that Plastical was solvent immediately prior to the Plastical Acquisition.  And it does not allege that

---

> (2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> a.  Was engaged or was about to engage in a business or a transaction for which the remaining assets of *the debtor* were unreasonably small in relation to the business or transaction; or
>>
>> b.  Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond *the debtor's* ability to pay as they became due.

6 *Del. C.* § 1304 (emphasis added).  And the other section provides, in pertinent part, that:

> A transfer made or obligation incurred *by a debtor* is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred *if the debtor* made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and *the debtor* was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

6 *Del. C.* § 1305 (emphasis added).

Plastical made any transfers.  Plastical did not incur any debt until the following June, when Plassein caused Plastical to become a lender under its financing agreements, and caused Plastical's assets to be used to secure all of Plassein's debt incurred to carry out the January Acquisitions and, later, the Rex Acquisition.

### A.    The Trustee Cannot Supplement The Complaint Now To Cure The Failure To Allege A Transfer By A Debtor.

In an attempt to escape the consequences of the Complaint's outright failure to allege the elements of fraudulent transfer, the Trustee offered an affidavit of its counsel, in which counsel claimed that Plassein was formerly known as Packaging, and therefore the Complaint should be deemed to have alleged a transfer by a debtor.  (Appx. Ex. I at A263 ¶ 11).  At the motion to dismiss stage, the court should consider only the complaint, the exhibits attached thereto, and matters of public record.  *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Therefore, the affidavit is entitled to no weight.  *See TWA Inc. Post-Confirmation Estate v. Marsh USA, Inc. (In re TWA Post-Confirmation Estate)*, 305 B.R. 228, 232 (Bankr. D. Del. 2004) (holding that "a party cannot amend its insufficient complaint by . . . affidavit filed in opposition to a motion to dismiss" (the court's brackets and internal quotation marks omitted)).  Rather, in opposing the motions to dismiss, the Trustee is limited to the Complaint, which fails to allege a transfer by a debtor as the Bankruptcy Court held.  Brandt at 326 (basing its holding that the Trustee failed to state a claim on the "allegations contained within the complaint").

### B.    The Transactions Should Not Be Collapsed.

Since the Complaint fails to allege that a debtor was rendered insolvent by the transfer of the Consideration to Mr. Chebeir, the Trustee argues instead that the January Acquisitions should be "collapsed" with the Rex Acquisition.  In so doing, the Trustee argues that the transfer to Mr. Chebeir should be treated as one and the same with the later transactions whereby Plassein caused Plastical and the other January Acquisitions to be bound by all of Plassein's acquisition debt.  The Trustee argues that collapsing is appropriate because (i) the participants considered those transactions to be "part of a whole"; and (ii) "the Trustee has alleged ample facts demonstrating that the defendants knew or should have known of all of the stages of the transaction and that, at the end of the day, [the January Acquisitions and Rex] received little or no value in exchange for the substantial new burden of debt" that they incurred.  (Op'g Br. at 34-35).  The Complaint does not support either aspect of this argument.

### 1.    The January Acquisitions And The Rex Acquisition Were Not A Single, Unified Transaction, And The Parties Did Not Consider Them Such.

The Complaint pleads no facts from which a reasonable finder of fact could infer that Mr. Chebeir considered the acquisition of his stock as part of a "whole" with the other January Acquisitions and the Rex Acquisition that took place months later.  The Trustee argues, without citation, that collapsing the January Acquisitions and the Rex Acquisition is appropriate because the defendants "unquestionably participated in the respective [sic] overall scheme" of Plassein's two LBOs.  (Op'g Br. at 35).  However, if the January Acquisitions and the Rex Acquisitions were part of a scheme, it was

perpetrated solely by Plassein and Packaging; there is no allegation in the Complaint that Mr. Chebeir knew about it.[11]  In fact, the Complaint pleads no facts to suggest that Mr. Chebeir even knew about the Rex Acquisition, which was to close eight months later. The Funds Flow Memorandum cited by the Trustee refers only to the fact that "[Packaging and] its subsidiaries" were parties to a loan agreement by which the January Acquisitions were to be financed, but it says nothing of the terms of that agreement and does not even identify the subsidiaries (Appx. Ex. B at A45), nor does the memorandum say anything about Plastical becoming bound by Plassein's loan agreements.

In *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1302 (3d Cir. 1986), on which the Trustee relies in support of his argument, the court held that the series of transactions in furtherance of an LBO should be collapsed into a single transaction.  The court held that the underlying transactions should be collapsed into a single transaction because (i) the three entities were each involved in the negotiations of the transactions; (ii) they occurred simultaneously; and (iii) the funds merely "passed through" one of the parties.  *Id.*  None of those three factors is presented by this case.  Here, the Complaint does not allege that Mr. Chebeir was involved in the other January Acquisitions or knew about the Rex Acquisition.  Indeed, the January and Rex acquisitions took place months apart, not simultaneously or even close in time, and funds did not pass through the January Acquisitions or Rex.

---

[11] The Complaint alleges that the January Acquisitions and the Rex Acquisition were accomplished as part of Plassein's plan to "acquire certain manufacturers of flexible packaging and specialty film," not in order to defraud anyone.  (Appx. Ex. B at A29-30 ¶ 27).

The other cases relied upon by the Trustee for this argument are likewise distinguishable.  *See Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 212 (3d Cir. 1990) (collapsing a series of transactions executed for the purpose of defrauding the defendant's creditors);[12] *Nat'l Forge*, 344 B.R. at 350 (collapsing a stock redemption transaction executed to defraud creditors with the transaction two weeks prior whereby the defendants obtained financing for the redemption).  Unlike those cases, the January Acquisitions and the Rex Acquisitions were discrete transactions that closed months apart; Mr. Chebeir had no intention that any of the transactions have anything to do with one another.  And, perhaps most importantly, the Complaint is devoid of any suggestion to the contrary.[13]

### 2.    In The Absence Of Allegations Of Bad Faith Or Intent To Defraud, The Transactions Cannot Be Collapsed.

The Complaint also pleads no facts from which a reasonable finder of fact could infer that Mr. Chebeir knew or should have known that the Rex Acquisition and the January Acquisitions amounted to fraudulent transfers.  In essence, the Trustee claims that Mr. Chebeir should be expected to have known that (i) the January Acquisitions and

---

[12]  The Trustee argues that the Court in *Voest* would still have "telescoped" the transactions in question, even in the absence of evidence of intent to defraud.  (Op'g Br. at 34 (citing *Voest*, 919 F.2d at 214-15)).  The court there said no such thing.  Rather, the court held that it would still have concluded that the defendants' transactions ran afoul of the Pennsylvania fraudulent transfer law, because, even in the absence of proof of intent, "the fraudulent nature of the conveyance in question would still be beyond dispute."  *Voest*, 919 F.2d at 215.

[13]  For the same reasons, the Trustee's argument that Mr. Chebeir was on constructive notice of the alleged fraud (Op'g Br. at 33 (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995))) must fail, because here, unlike *HBE*, the Complaint alleges no facts that impose upon Mr. Chebeir an obligation to inquire further into the transaction.

the Rex Acquisition should be considered as one; (ii) in those combined transactions, substantial debt was incurred; (iii) all of the January Acquisitions and Rex were to be burdened with the debt; and (iv) the January Acquisitions and Rex were of little or no value. (Op'g Br. at 35). However, just as the Complaint does not allege that Mr. Chebeir even knew about the Rex Acquisition, it does not allege that he knew anything about the ratio of the debt incurred by Plassein to the property of the January Acquisitions. Further, the Complaint does not allege that Mr. Chebeir knew that Plassein intended for Plastical to become bound with the debt incurred in connection with the January Acquisitions. There thus is no factual basis for the Trustee's claim that Mr. Chebeir should have known that the Plastical Acquisition was somehow fraudulent.

The Complaint's arguments that defendants knew or should have known, and the conclusory allegations of the elements of fraud, all without any supporting facts (*see id.* at A33-34 ¶¶ 46-47), are not entitled to credit at the motion to dismiss stage. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). It is not enough simply to plead that the defendant knew or should have known about the circumstances of alleged fraud. *WESI, LLC v. Compass Env'l, Inc.*, 509 F.Supp.2d 1353, 1358 (N.D. Ga. 2007); *Metro Comm. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch. 2004) ("While [Court of Chancery Rule 9, which is substantively identical to Fed. R. Civ. Pro. 9] permits 'intent, knowledge and other condition of mind of a person' to be averred generally, '[t]o say "Defendant knew or should have known" is not adequate'"). The Trustee was required to plead specific facts from which the court could infer the defendants' knowledge. *See Burlington Coat Factory*, 114 F.3d at 1418 ("boilerplate and

conclusory allegations will not suffice.  Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible" (internal citation omitted)).  In the absence of any such factual allegations, the Trustee's fraud claims must fail.

And rather than giving rise to an inference of knowledge, the Complaint and its attachments affirmatively demonstrate that there is no basis for the Trustee's claim that Mr. Chebeir knew or should have known that the Plastical Acquisition was supposedly fraudulent.  Specifically as to Plastical, according to the Complaint, Packaging purchased over $6.5 million in assets for a $2 million payment to Mr. Chebeir.  (Appx. Ex. B at A120).  In other words, the Complaint does not support an inference that Mr. Chebeir knew or should have known that the Plastical Acquisition was of little or no value compared to the debt incurred to close it, or that it allegedly rendered Plastical insolvent.

In the absence of any allegation that they knew or should have known that the January Acquisitions or the Rex Acquisition were fraudulent, there is no basis to collapse the transactions.  The inquiry whether transactions should be collapsed should focus on the "knowledge and intent of the parties involved and whether there was an overall scheme to defraud creditors."  *Nat'l Forge*, 344 B.R. at 348.  Where there is such a scheme, the court will collapse transactions to prevent their formal separateness from preventing fraud from being remedied.  *See Voest*, 919 F.2d at 215 (sustaining the collapse of transactions fraudulently structured by the parties to shield an asset purchase from creditors); *Tabor Ct*, 803 F.2d at 1296 (sustaining the collapse of transactions where the parties acted in bad faith when the transferor knew that the transfers in question were

without adequate consideration and would render the transferee insolvent). Here, the Complaint alleges no facts to suggest bad faith or knowledge on the part of Mr. Chebeir. Therefore, there is no basis to collapse the Plastical Acquisition with any other transaction.

## **CONCLUSION**

For the foregoing reasons, the order of the Bankruptcy Court dismissing the Complaint should be AFFIRMED.

ASHBY & GEDDES

*/s/Ricardo Palacio*

William P. Bowden (#2553)
Ricardo Palacio (#3765)
Andrew D. Cordo (#4534)
500 Delaware Ave. 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
wbowden@ashby-geddes.com
rpalacio@ashby-geddes.com
acordo@ashby-geddes.com

*Attorneys for Appellee Sam Chebeir*

Dated: March 10, 2008
188834.1

26