UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>PLASSEIN INTERNATIONAL CORP., *ET AL.*<br>(NKA PL LIQUIDATION CORP.),<br><br>DEBTORS | CHAPTER 7 CASE<br>NO.: 03-11489 (KG)<br>JOINTLY ADMINISTERED<br><br>ADV. PRO. NO.<br>05-50692 (KG) |
| WILLIAM BRANDT, AS HE IS THE TRUSTEE OF THE ESTATES OF PLASSEIN INTERNATIONAL CORP., *ET AL.*,<br>APPELLANT<br><br>*V.*<br><br>B.A. CAPITAL COMPANY, *ET AL.*,<br><br>APPELLEES | CIVIL ACTION NO.<br>07-345-JJF |

# MEMORANDUM OF LAW OF THE MARSHALL PLASTIC FILM DEFENDANTS IN REPLY TO THE OPENING BRIEF OF THE APPELLANT

Dated: March 10, 2008


JASPAN SCHLESINGER
HOFFMAN LLP

*/s/ Laurie S. Polleck*
By: Laurie (No. 3995)
913 North Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010

Sarna & Associates, pc
By:

/s/ James A. Sarna
James A. Sarna (JAS-6667, *pro hac vice*)
A Member of the Firm
99 Main Street, Suite 301
Nyack, New York 10960
Telephone: (845) 348-9822
Facsimile: (845) 818-9626

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................................ 3
NATURE AND STAGE OF PROCEEDINGS ........................................................ 3
ISSUES PRESENTED FOR REVIEW ........................................................ 5
BRIEF RESTATEMENT OF FACTS ........................................................ 6
ARGUMENT ........................................................ 8

STANDARD OF REVIEW ........................................................ 8

SECTION 546(E) OF THE CODE PROHIBITS THE PLAINTIFF TRUSTEE FROM AVOIDING THE TRANSFERS MADE TO THE MARSHALL PLASTIC FILM DEFENDANTS ........................................................ 9

THE LANGUAGE OF §546(E) IS PLAIN AND UNAMBIGUOUS AND IT IS NOT NECESSARY TO RESORT TO LEGISLATIVE HISTORY OR ANY OTHER NON-STATUTORY SOURCE FOR CLARIFICATION ........................................................ 14

THE JANUARY AND AUGUST TRANSACTIONS SHOULD NOT BE "COLLAPSED" FOR PURPOSES OF THE FRAUDULENT CONVEYANCE ARGUMENT ... 16

CONCLUSION ........................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Bevill, Bresler & Schulman Asset Management Corporation v. Spencer Savings & Loan Association*, 878 F.2d 742, 751 (3d Cir. 1989) ........................................................ 13

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ........................................................ 8

*Hechinger Investment Company of Delaware v. Fleet Retail Finance Group* ("*Hechinger*"), 274 B.R. 71, 80 (D. Del. 2002) ........................................................ 8, 10, 13, 17

*In re Loranger Mfg. Corp.*, 324 B.R. 575, 584-85 (Bankr. W.D.Pa. 2005) ........................................................ 15

*In re National Forge*, 344 B.R. 340 at 347 (W.D.Pa. 2006) ........................................................ 17

*In re OODC, LLC*, 321 B.R. 128, 138 (Bankr. D. Del. 2005) ........................................................ 17

*In re Plassein*, 366 B.R. 318, (Bankr. D. Del. 2007) ........................................................ 11, 13, 15, 17

*In re R.M.L., Inc.*, 92 F.3d 139, 152 (3d Cir. 1996) ........................................................ 18

*In re The IT Group, Inc.*, 359 B.R. 97 (Bankr. D. Del. 2006) ........................................................ 10

*Kaiser Steel Corp. v. Pearl Brewing Co.* (*In re Kaiser Steel Corp.*), 952 F.2d 1230, 1240 (10th Cir. 1991) ............ 13

*Lowenschuss v. Resorts Int'l, Inc.* (*In re Resorts Int'l, Inc.*), 181 F.3d 505 (3d Cir. 1999) ........................ passim

*Official Committee of Unsec. Creditors of Norstan Apparel Shops, Inc. v. Lattman* (*In re Norstan Apparel Shops, Inc.*), 367 B.R. 68, 76 (Bankr. EDNY 2007) ........................................................ 11

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 ~ FACSIMILE

*Official Committee of Unsecured Creditors of The IT Group v. Acres of Diamonds, L.P.*, (*In re The IT Group, Inc.*), 2006 WL 3833933 (Bankr. D.Del. 2006). ........ 15, 16

*Peltz v. Hatten*, 279 B.R. 710, 738 (D. Del. 2002), aff'd, 60 F. App'x 401 (3d Cir. 2003) ........ 19

*Pension Benefit Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); ........ 9

*QSI Holdings, Inc. and Quality Stores, Inc., v. Alford, et al.* (*In re Quality Stores, Inc et al.*) No. 1:06-CV-876, 2007 WL 4557855, at *7-8 (W.D. Mich. Dec. 21, 2007) ........ 12

*TWA Inc. Post-Confirmation Estate v. Marsh USA Inc.* (*In re TWA Post-Confirmation Estate*), 305 B.R. 228, 232 (Bankr. D. Del. 2004) ........ 9

*U.S. v. Gleneagles Investment Co., Inc.*, 565 F. Supp. 556 (M.D. Pa. 1983); 571 F. Supp. 935 (M.D. Pa. 1983) ........ 17

*U.S. v. Tabor Court Realty*, 803 F.2d 1288 (3d Cir. 1986) ........ 17, 18

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206 (3d Cir. 1990) ........ 17

*Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R.. 655 (N.D. Ill. 1991). ........ 15

*Williams v. Morgan Stanley Capital Group Inc.* (*In re Olympic Natural Gas Co.*) 294 F.3d 737 (5th Cir. 2002) ........ 12

*Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) ........ 15

**STATUTES**

11 U.S.C. § 546(e) ........ 9

28 U.S.C. §157(b)(1) ........ 4

28 U.S.C. §157(b)(2)(H) ........ 3

28 U.S.C. §158(a) ........ 4

The United States Bankruptcy Code, 11 U.S.C. §101 *et seq.* ........ 3, 4

**OTHER AUTHORITIES**

H.R. Rep. No. 97-420 ........ 12

Pub. L. 97-222, §8, 96 Stat. 235 (1982) ........ 12

**TREATISES**

5 Collier on Bankruptcy §546.06[2][b] ........ 13

5A Wright & Miller, Federal Practice and Procedure, § 1357 (2d ed. 1990) ........ 9

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 -- FACSIMILE

## INTRODUCTION

Sarna & Associates, PC and Jaspan, Schlesinger, Hoffman, LLP, co-counsel to the defendants The Andrew Marshall Forsberg Trust, The Ethel Forsberg Revocable Trust, The Janis Rae Forsberg Trust, Frank John McCarthy, Daniel R. Orris and Bernadine Orris (collectively, the "Marshall Plastic Film Defendants"), submit this Memorandum of Law in response to the Opening Brief (the "Opening Brief") of Appellant, William Brandt (the "Trustee" or "Appellant"), Trustee of the Estates of Plassein International Corp., *et al.,* dated February 14, 2008.

## NATURE AND STAGE OF PROCEEDINGS

As set forth in the Appellant's Opening Brief, this adversary proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(H). Promptly after this Adversary Proceeding was commenced, each of the defendants filed a Motion to Dismiss the Complaint, all of which sought dismissal for failure to state a cause of action. All of the Motions to Dismiss directed the Court's attention to a line of cases in the Third Circuit that is binding on the Bankruptcy Court and this District Court. In this line of cases[1], the Third Circuit Court of Appeals ruled that the transactions which are the basis of the Trustee's Complaint are not transactions that may be avoidable pursuant to §547 of The United States Bankruptcy Code, 11 U.S.C. §101 *et seq*.[2] After extensive briefing and oral argument, and subsequent to other decisions in the Bankruptcy Court which followed the *Resorts* Line as binging precedent, on April 20, 2007 the United States

---

1 Which begins with the *Resorts* case, as cited below. Hereinafter the "*Resorts* Line."

2 Unless otherwise noted, all code references (§ ___ ) are references to the United States Bankruptcy Code, 11 U.S.C. §101 *et seq*. as in effect at the time this case was commenced.

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

Bankruptcy Court, which had jurisdiction pursuant to 28 U.S.C. §157(b)(1), entered a final order dismissing the Complaint. The Bankruptcy Court relied upon the Third Circuit precedent cited by the Defendants as well as the plain language of §546(e) of the Bankruptcy Code. The Bankruptcy Court also relied upon the Delaware fraudulent conveyance statute in dismissing the Complaint.

The Trustee filed a notice of Appeal on April 27, 2007. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a).

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 -- FACSIMILE

## ISSUES PRESENTED FOR REVIEW

I. Was the Bankruptcy Court correct when it followed the precedent of the Third Circuit's holding in *Lowenschuss v. Resorts Int'l, Inc.* (*In re Resorts Int'l, Inc.*), 181 F.3d 505 (3d Cir. 1999) and when it ruled that the plain language of Section 546(e) of the Bankruptcy Code precludes avoidance of a settlement payment even if it did not involve a transaction of publicly traded securities?

II. Was the Bankruptcy Court correct when it ruled that the Complaint failed to state a claim upon which relief may be made because the Trustee did not allege that the transfers which form the basis of the Complaint were made by a debtor?

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 -- FACSIMILE

## BRIEF RESTATEMENT OF FACTS*

1. According to the Complaint, the causes of actions alleged therein began with the formation of Plassein International Corp., "for the purpose of acquiring certain manufacturers of flexible packaging and specialty film through a series of stock acquisitions commencing with the signing of acquisition agreements in June and July of 1999 and the closing on these initial acquisition agreements in January of 2000." *Plaintiff's Complaint*, ¶27. These three acquisitions are referred to as the "June Acquisitions" and the companies acquired are referred to as the "January Target Companies." *Plaintiff's Complaint*, ¶31 and ¶32. On January 10, 2000, the transactions closed, "Plassein…thereby acquiring the stock of the January Target Companies." *Plaintiff's Complaint*, ¶30.

2. On January 10, 2000, $31,002,012 was disbursed via Fleet Bank to the shareholders of the January Target Companies. *Plaintiff's Complaint*, ¶39. Of this sum, $5,098,559.72 was disbursed to the Marshall Plastic Film Defendants (the "MPFD Transactions"). *Plaintiff's Complaint*, ¶40b. Upon information and belief, disbursements were made by means of wire transfers[3] from Fleet Bank to each individual selling shareholder's account. *See*, Exhibit A to Plaintiff's Complaint: pages 2, 8-9, A-1 (cover page entitled "Wire Transfer Information"), Bates numbered pages P 08865-P 08867 therein detailing fund wire instructions.

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 -- FACSIMILE

* For a more complete recitation of the facts surrounding the transaction with the Marshall Plastic Film Defendants, the Court's attention is directed to the Complaint, the various Motions to Dismiss and the other pleadings filed in this case.

3 "Wire Transfer" is the commonly used term for a same day transfer of funds between financial institutions, usually conducted through the Federal Reserve's Fedline system.

3. Paragraph 40(b) of the Complaint alleges the that disbursements were made to the Marshall Plastic Film Defendants at the closing of the purchase of the January Target Companies as consideration for the sale of the Marshall Plastic Film Defendants' shares in the company being acquired. Exhibit A to the Plaintiff's Complaint alleges specific wire transfers to the Marshall Plastic Film Defendants but is erroneous.[4]

4. More than five years after these transactions[5] were completed the Plaintiff filed the Adversary Complaint. After extensive briefing and oral argument, the Bankruptcy Court determined that the Complaint failed to state a claim upon which relief might be granted for several reasons. The most obvious and clearly reasoned basis for the Bankruptcy Court's decision was that it was bound by the precedent of the *Resorts* Line and a plain reading of §546(e). It is respectfully submitted that this Court is similarly bound to arrive at the same conclusion.

5. The Trustee has sought, in his Complaint and in response to the Motions to Dismiss, and now here in this appeal, to characterize the MPFD Transactions as something which they were not. That is, the Trustee seeks to characterize the MPFD Transactions as somehow irregular and statutorily inferior to other similar transactions and to insert or imply limiting language into the statute which is plain on its face.

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

---

4 It can be seen that although the Complaint alleges that each of Daniel R. Orris and Bernadine Orris received $41,177.17, the "Funds Flow at Closing" document (Exhibit A to Plaintiff's Complaint) shows that only one payment in that amount was made to Daniel Orris and Bernadine Orris jointly. The total alleged in the Complaint to have been transferred to the Marshall Plastic Film Defendants is $5,098,559.72, which total is arrived at only if the payment of $41,177.17 to Mr. and Mrs. Orris was made only once. While not necessary to determine for purposes of this matter, Mr. and Mrs. Orris were paid only once.

5 The transaction closed on January 10, 2000.

6. The Trustee alleges, and has argued unsuccessfully, that somehow because the MPFD Transactions did not involve publicly traded securities they are unusual and irregular transactions and because of the nature in which the MPFD Transactions were effected they are somehow inferior to any similar transaction which may involve larger amounts of money or larger companies which may or may not use publicly traded securities as consideration for the transaction. According to the Trustee's logic, Congress did not take into consideration that there are securities transactions that occur every day that involve private companies. According to the Trustee's logic, Congress sought only to protect and preserve the efficiency and reliability of the market in publicly traded securities that are transacted on public securities markets. That simply is not the case and the Bankruptcy Court considered, and soundly rejected, the Trustee's argument.

## ARGUMENT

### STANDARD OF REVIEW

7. When evaluating motions to dismiss, courts "must assume the facts alleged in the [complaint] to be true and draw all factual inferences in favor of the non-moving party…." *Hechinger Investment Company of Delaware v. Fleet Retail Finance Group* ("*Hechinger*"), 274 B.R. 71, 80 (D. Del. 2002). Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See id.* (*quoting Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). As discussed below, and as the Bankruptcy Court agreed, the facts alleged in the Complaint fail to state any claim upon which relief may be granted against the Marshall Plastic Film Defendants.

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

8. Moreover, the Trustee did not allege the facts necessary to advance his claims. That is, he failed to allege that the transfers which he seeks to avoid were made by a debtor, which is an essential element of the Delaware statutes by which he seeks to avoid the alleged fraudulent transfers.

9. As discussed below, in cases where a motion to dismiss is made based on the argument that a plaintiff has failed to allege a fact that is required to be alleged before relief can be granted, the court hearing the motion to dismiss must base its ruling solely on the Complaint before it, and not supplemental filings. *See, e.g., TWA Inc. Post-Confirmation Estate v. Marsh USA Inc.* (*In re TWA Post-Confirmation Estate*), 305 B.R. 228, 232 (Bankr. D. Del. 2004) ("a 'party cannot amend its [insufficient] complaint by a response or affidavit filed in opposition to a motion to dismiss'" (citations omitted)). The law is well settled, including in the Third Circuit, that a deficiency in one's pleadings may not be corrected by statements made in supplemental motion papers. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guaranty Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *See also,* 5A Wright & Miller, Federal Practice and Procedure, § 1357, at 299 (2d ed. 1990).

**Section 546(e) of the Code Prohibits the Plaintiff Trustee From Avoiding the Transfers Made To the Marshall Plastic Film Defendants**

10. The Plaintiff's causes of action for avoidance, recovery and preservation of fraudulent transfers are unavoidable as "settlement payments " under 11 U.S.C. § 546(e).

11. Section 544(b) of the United States Bankruptcy Code (the "Code"), upon which the Plaintiff bases his right to pursue a fraudulent conveyance claim, authorizes the trustee to

Sarna & Associates, PC
99 Main Street, Suite 301
Nyack, New York 10960
845.348.9822
845.818.9626 – Facsimile

"avoid any transfer of interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law." 11 U.S.C. § 544(b); *Hechinger*, 274 B.R. at 83. However, § 546(e) of the Code, "eliminates this avoidance power when the transfer in question is a securities 'settlement payment'." *Id.*

12. Section 546(e) of the Code states that "[n]otwithstanding section[] 544..., the trustee may not avoid a transfer that is a...settlement payment, as defined in section 101 or 741 of this title...made by or to a...financial institution." The *Hechinger* court provided a complete background and analysis of the "settlement payment" defense to fraudulent conveyance claims, relying on *Lowenschuss v. Resorts International, Inc.* (*In re Resorts International, Inc.*) ("*Resorts*"), 181 F.3d 505 (3d Cir. 1999).

13. That analysis, which is binding upon the Bankruptcy Court and indeed this Court, takes a "plain meaning" approach to the statute in question. Unfortunately for the Trustee, that plain meaning does not permit the inclusion of a requirement that the transaction involve publicly traded securities. Indeed, the Trustee admitted as such in his Consolidated Response to the various Motions to Dismiss when he wrote, "While we of course recognize that this Court is bound to follow *Resorts*, we expressly reserve the right to argue to the Third Circuit that *Resorts* should be reconsidered, should this case reach that court." *Trustee's Consolidated Brief In Opposition to Defendants' Various Motions to Dismiss the Complaint* dated July 15, 2005, Page 10, footnote 3.[6]

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

[6] During the significant delay between the first and second oral arguments on the various Motions to Dismiss Similarly, another Delaware Bankruptcy Court decision was published regarding a similar motion to dismiss based on the same statutes and facts that are similar to the facts at issue here. When asked about that ruling, in *In re The IT Group, Inc.,* 359 B.R. 97 (Bankr. D. Del. 2006), the Trustee's counsel conceded that his "argument is now directly contrary to the position taken by Judge Walrath in

14. In his April 20, 2007 opinion dismissing the Complaint, *In re Plassein*, 366 B.R. 318, (Bankr. D. Del. 2007) ("April 20, 2007 Opinion"), Bankruptcy Judge Gross followed the *Resorts* Line of cases and analyzed whether the MPFD Transactions fell within the exception to the Trustee's avoidance powers under §540(e).

15. First, Judge Gross looked at the definition of a "settlement payment" and wrote:

> A "settlement payment" is defined under section 741(8) of the Bankruptcy Code to include "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). Put simply, "a settlement payment is generally the transfer of cash or securities made to complete a securities transaction." *Lowenschuss v. Resorts International, Inc.* (*In re Resorts International, Inc.*), 181 F.3d 505, 515 (3d Cir. 1999).

April 20, 2007 Opinion; 366 B.R. at 323.

16. The Trustee would have this Court ignore the Third Circuit precedent and somehow "read into the statute" an interpretation found by another Bankruptcy Court from outside this Circuit, which relied upon the final clause of §741(8), which held that the exception of §544(e) applies only to settlement payments "commonly used in the securities trade." The Bankruptcy Court for the Eastern District of New York in *Official Committee of Unsec. Creditors of Norstan Apparel Shops, Inc. v. Lattman* (*In re Norstan Apparel Shops, Inc.*), 367 B.R. 68, 76 (Bankr. EDNY 2007) held that the term "securities trade" in "this statutory context plainly means the public securities market."

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

---

the IT Group case. All I can say on that point…is I think Judge Walrath was wrong, and I would ask [the Court] to find different from her (sic)." Transcript dated Apr. 12, 2007, at 29:03–29:08.

17. Unfortunately for the Trustee, however, the term "securities trade" is not defined anywhere in the Bankruptcy Code so, once again, the Trustee urges this Court to (a) disregard the considered and binding opinions of the Court of Appeals for the Third Circuit, (b) ignore the fact that securities are commonly and routinely bought, sold or otherwise traded even when those securities are not listed on a public market (such as the NYSE, AMEX, NASDAQ, etc.) and (c) usurp the role of the United States Congress by essentially inserting a limiting definition into statute that was enacted in 1982[7] and which the Congress, despite several thorough reviews of the Bankruptcy Code since 1982 and several comprehensive overhauls of the Bankruptcy Code (most notably in 1984 and again in 2005) did not see fit to insert itself.

18. Congress could have easily addressed these concerns by narrowing or refining the language of § 546(e) or the definition in § 741(8). It has not done so. If application of the plain language of § 546(e) does not lead to an unjust or absurd result, this Court should not impose any type of result-oriented interpretation of the language of the statute. *QSI Holdings, Inc. and Quality Stores, Inc., v. Alford, et al.* (*In re Quality Stores, Inc et al.*) No. 1:06-CV-876, 2007 WL 4557855, at *7-8 (W.D. Mich. Dec. 21, 2007).

19. Indeed, other courts have held similarly. In *Williams v. Morgan Stanley Capital Group Inc.* (*In re Olympic Natural Gas Co.*) 294 F.3d 737 (5th Cir. 2002) the Fifth Circuit Court of Appeals reject the argument of the trustee in that case that "in order to be exempt from avoidance, a 'settlement payment' must … be cleared or settled through a centralized system."

---

7 *See* Pub. L. 97-222, §8, 96 Stat. 235 (1982) and the Trustee's Opening Brief, page 11. However, looking to the intent of Congress, it should be noted that §546(e) was enacted to "ensure that the avoidance powers of a trustee are not construed to permit margin or settlement payments to be set aside except in cases of fraud." H.R. Rep. No. 97-420, at 2. It is submitted, based on a reading of the legislative history, that this is meant to refer to actual fraud, not constructive "fraud" as used in the fraudulent conveyance statutes.

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

*Citing* 5 Collier on Bankruptcy §546.06[2][b], at 546-48 (stating that "settlement payment" should be interpreted very broadly); *Kaiser Steel Corp. v. Pearl Brewing Co.* (*In re Kaiser Steel Corp.*), 952 F.2d 1230, 1240 (10th Cir. 1991) (advocating broad interpretation of "settlement payment," and holding that consideration paid to shareholders for their stock in connection with a leveraged buyout would qualify as settlement payments under §546(e)); and also *Resorts* 181 F.3d at 515-16. The Marshall Plastics Film Defendants respectfully submit that such the interpretation of §540(e) urged by the Trustee is unwarranted and it is further submitted that this Court, as it is bound by the *Resorts* Line of cases, must reject the Trustee's argument wholeheartedly.

20. Judge Gross considered the Trustee's argument for narrowing the definition of "securities trade" and rejected it. Instead, as he was obligated to do, Judge Gross followed the Court of Appeals for the Third Circuit's instruction and held that "this definition is 'extremely broad' and encompasses almost all securities transactions." *Citing Resorts* and noting that *Resorts* quoted an even earlier Third Circuit Court of Appeals decision in *Bevill, Bresler & Schulman Asset Management Corporation v. Spencer Savings & Loan Association*, 878 F.2d 742, 751 (3d Cir. 1989). *Plassein*, 366 B.R. at 323.

21. Judge Gross then followed the precedent, and the common sense approach, established by the Court of Appeals and, citing *Resorts* once more, wrote that "In *Resorts*, the Court of Appeals held that payment to a shareholder for his shares as part of a leveraged buyout was 'obviously a common securities transaction' and, therefore, a settlement payment under section 546(e)." *Id. Citing Resorts* and *Hechinger.*

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 -- FACSIMILE

22. Based on a careful reading of the applicable statute, and declining the Trustee's plea to disregard the precedent of the *Resorts* Line of cases, the Bankruptcy Court ruled that the MPFD Transactions were not avoidable by the Trustee. The Marshall Plastics Film Defendants submit that this Court is similarly bound to follow the *Resorts* Line of cases and urges the Court to deny the Trustee's appeal wholeheartedly.

**THE LANGUAGE OF §546(E) IS PLAIN AND UNAMBIGUOUS AND IT IS NOT NECESSARY TO RESORT TO LEGISLATIVE HISTORY OR ANY OTHER NON-STATUTORY SOURCE FOR CLARIFICATION**

23. The Trustee's position is that §§546(e) and 741 are unambiguous, despite the fact that he urges the Court to imply a limitation or assume that the clear language has an alternative meaning that is not clearly present in the text. However, perhaps as a way to "hedge his bet," the Trustee then asks the Court, if it finds that there is some ambiguity in the language of the statute, to look to the legislative history. App. Br. P. 15.

24. In a carefully researched and plodding recitation of case law that analyzes what one should do when faced with an ambiguous statute, the Trustee argues that the legislative history is "remarkably clear" and claims to find a nugget of gold amid the rubble of nonbinding legislative history.

25. The Trustee neglects to acknowledge, however, that the Third Circuit Court of Appeals has already heard, and rejected, this argument. Indeed, Judge Gross points this out in his April 20, 2007 Opinion and writes:

> [T]he Trustee endeavors to limit the application of Resorts to publicly traded securities…[and] argues that Section 546(e) was enacted for protecting the operation of the security industry's clearance and settlement system which operates only with respect to securities that are publicly traded. The Trustee thus argues that section 546(e) applies only to publicly traded securities.

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

* * *

> The Trustee's argument, however, was expressly rejected by Resorts…. "Under a literal reading of section 546(e)…this was a settlement payment 'made by…a financial institution.'" In re Resorts International, 181 F.3d at 515 (*quoting* 11 U.S.C. § 546(e)).

*Plassein*, 366 B.R. at 324.

26. The Bankruptcy Court held that the *Resorts* Court had considered and rejected the reasoning upon which the Trustee's relies[8], and noted that the Third Circuit Court of Appeals held that the plain language of the statute trumped extraneous considerations, and therefore concluded that "the term 'settlement payment' is a broad one that includes almost all securities transactions." April 20, 2007 Opinion, 366 B.R. at 323, *citing Resorts*, 181 F.3d at 515-516.

27. The Bankruptcy Court noted that the Trustee failed to point to any Third Circuit decision that limits application of Resorts to public companies. April 20, 2007 Opinion, 366 B.R. at 324. The Bankruptcy Court found, however, that "the Court of Appeals held firm that the plain language of the statute mandated the 'logical conclusion' that the section 546(e) exemption extends to all securities transactions, whether the securities at issue are publicly traded or are securities traded outside the public trading system." *Id.*

28. Finally, the Bankruptcy Court noted that there have been more recent decisions, within the Third Circuit, that follow the *Resorts* analysis. *See In re Loranger Mfg. Corp.*, 324 B.R. 575, 584-85 (Bankr. W.D.Pa. 2005) (holding that $9 million payment to defendant in a leveraged buyout for shares that were not publicly traded was unavoidable under section 546(e)); *Official Committee of Unsecured Creditors of The IT Group v. Acres of Diamonds, L.P.*, (*In re The IT Group, Inc.*), 2006 WL 3833933 (Bankr. D.Del. 2006).

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

---

[8] As held in *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) and *Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R.. 655 (N.D. Ill. 1991).

29. Indeed, in *The IT Group* case, which has a remarkably similar fact pattern as the case before the Court now, the post-confirmation trust sued to avoid and recover an alleged fraudulent conveyance in the amount of $575,000 for the purchase of stock in a privately held company. In granting summary judgment and finding the transaction was not avoidable, the Bankruptcy Court similarly and unequivocally held that “the term settlement payment is to be applied broadly to any transfer of stock or cash to pay for stock.” Id. at *4. Chief Bankruptcy Judge Walrath applied the settlement payment exemption to privately held securities even though the transaction did not involve a true financial intermediary or securities clearing agency, finding that:

> Although this case does not involve a leveraged buyout, publicly traded stock, or a clearing agency, the Third Circuit’s holding in Resorts *mandates* a conclusion that section 546(e) is broad enough to protect from avoidance a “settlement payment . . . made by . . . [a] financial institution.”

*Id*. (citations omitted, emphasis supplied).

30. Under the binding precedent of the Third Circuit Court of Appeals, and because the facts before this Court are analogous to the facts in *Hechinger* and *Resorts*, the Plaintiff has failed, as a matter of law, to state any claim against the Marshall Plastic Film Defendants for avoidance of a fraudulent transfer upon which relief may be granted.

**THE JANUARY AND AUGUST TRANSACTIONS SHOULD NOT BE “COLLAPSED” FOR PURPOSES OF THE FRAUDULENT CONVEYANCE ARGUMENT**

31. As stated above, in his Complaint, the Trustee failed to allege that a debtor made the transfers which he sought to avoid. The Trustee argues that this omission ought to be excused because an acquisition that closed subsequent to the January Target Companies’

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

transaction (the "Rex Acquisition") and any subsequent refinancing by Plassein should be "collapsed," or considered a single transfer. The Bankruptcy Court rejected the Trustee's argument and ruled that, because the Trustee failed to allege that any of the defendants to the various recovery actions acted with an actual intent to defraud or in bad faith, "the allegations contained within the Complaint do not serve as a basis for collapsing the transactions." *Plassein*, 366 B.R. at 326.

32. In the Third Circuit, absent proof of intent to defraud or bad faith, otherwise separate transactions will not be collapsed. *See*, *e.g., U.S. v. Gleneagles Investment Co., Inc.*, 565 F. Supp. 556 (M.D. Pa. 1983); 571 F. Supp. 935 (M.D. Pa. 1983); 584 F. Supp. 671 (M.D. Pa. 1984); *aff'd sub nom*, *U.S. v. Tabor Court Realty*, 803 F.2d 1288 (3d Cir. 1986) (sustaining collapse of various transactions where a party "did not act in good faith"); *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.,* 919 F.2d 206 (3d Cir. 1990) (upholding finding that several transactions at the same time were a single integrated transaction that functioned as a subterfuge and damaged unsecured creditors); *In re National Forge*, 344 B.R. 340 at 347 (W.D.Pa. 2006) ("In determining whether a series of transactions should be 'collapsed' into a single integrated one, courts focus not on the form of the transaction but on its substance-especially the knowledge and intent of the parties involved in the transaction and whether there was an overall scheme to defraud creditors.") (emphasis added); *Hechinger*, 274 B.R. at 91 ("Courts . . . focus not on the structure of the transaction but the knowledge and intent of the parties involved in the transaction.") (citation and internal quotation marks omitted); *In re OODC, LLC*, 321 B.R. 128, 138 (Bankr. D. Del. 2005) ("In deciding whether to 'collapse' a series of transactions into one

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

integrated transaction, the issue is . . . whether there was an overall scheme to defraud the estate and its creditors by depleting all the assets through the use of a leveraged buyout.”).[9]

33. Here, the Trustee has failed to allege any intent, bad faith or indeed any scheme to defraud creditors. To the contrary, the Complaint alleges that the debtor was formed to acquire manufacturers of flexible packaging and specialty film for strategic business reasons. Complaint, ¶ 27. That alone is sufficient to refute the insinuation of bad faith. The Third Circuit has held that hindsight is not, at least in this instance, “20/20.” Even if it turns out, after the fact, that no value was conferred on a transferor, or that the scheme was not, in fact, successful, that alone is insufficient to be the indicia of bad faith. See, e.g., *In re R.M.L., Inc.*, 92 F.3d 139, 152 (3d Cir. 1996) (“[T]he mere expectation that the fusion of two companies would produce a strong synergy (an expectation that turned out to [be] inaccurate in hindsight) would suffice to confer ‘value’ so long as the expectation was ‘legitimate and reasonable.’”).

34. In addition. the Complaint alleges that thirty-three months passed between the Rex Acquisition and the Chapter 11 filing, and nearly five years before the cases were converted. Fraudulent transfer law is meant to provide redress when there is actual or imputed misconduct in connection with a transaction wherein the transferor (and possibly the transferee) knew, or should have known, that what it was doing was somehow “wrong.” Fraudulent transfer law does not, however, allow the Trustee, in playground parlance, a “do over” simply because, several

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE

[9] The Trustee attempts to discard the logic of *Tabor Court Realty* and suggest that all that is required to collapse a transaction is a party’s “knowledge of a global deal.” App. Br. at 33. However, the court in *Tabor Court Realty* looked carefully at the facts pertinent to *that* case and found it important that the transferor in that case, “knew or strongly suspected that the imposition of the loan obligations … would probably render insolvent both the [borrower] and each individual member thereof. In addition, [the transferor] was fully aware that no individual member of the [borrower] would receive fair consideration … in exchange for the loan obligations to [the transferor]. Thus, we conclude that [the transferor] does not meet the standard of good faith ….” *Tabor Court Realty*, 803 F.2d 1295-96. Of course, the Trustee’s Complaint against the Marshall Plastic Film Defendants contains no such allegation because none can reasonably be made.

years after the fact it turns out that, despite the best efforts and intentions, the transaction turned out to be less profitable than it was hoped it would be. *Peltz v. Hatten*, 279 B.R. 710, 738 (D. Del. 2002), aff'd, 60 F. App'x 401 (3d Cir. 2003).

35. The Marshall Plastic Film Defendants urge this Court to deny the Trustee's plea for a "do over" and to reject his appeal.

## CONCLUSION

For the reasons and upon the facts and case law set forth above, the Marshall Plastic Film Defendants respectfully request that this Honorable Court deny the Trustee's Appeal and affirm the Bankruptcy Court's April 20, 2007 Opinion and the accompanying Order Dismissing the Adversary Complaint in its entirety.

The Andrew Marshall Forsberg Trust, The Ethel Forsberg Revocable Trust, The Janis Rae Forsberg Trust, Frank John McCarthy, Daniel R. Orris and Bernadine Orris
By their co-counsel,

SARNA & ASSOCIATES, PC
By:

*/s/ James A. Sarna*
James A. Sarna (JAS-6667, *pro hac vice*)
A Member of the Firm
99 Main Street, Suite 301
Nyack, New York 10960
Telephone: (845) 348-9822
Facsimile: (845) 818-9626
Dated: Nyack, NY
March 10, 2008

JASPAN SCHLESINGER HOFFMAN LLP

*/s/ Laurie S. Polleck*
By: Laurie S. Polleck (Bar No. 3995)
913 North Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010
Dated: Wilmington, DE
March 10, 2008

SARNA & ASSOCIATES, PC
99 MAIN STREET, SUITE 301
NYACK, NEW YORK 10960
845.348.9822
845.818.9626 – FACSIMILE