# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | ) | Chapter 7 |
| | ) | |
| PLASSEIN INTERNATIONAL | ) | Bankr. Case No. 03-11489-KG |
| CORP., *et al.* (n/k/a PL Liquidation Corp. | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Adversary Proceeding |
| | ) | No. 05-50692-KG |
| | ) | |
| WILLIAM BRANDT, as he is | ) | |
| the Trustee of the Estates of | ) | |
| Plassein International Corp., *et al.*, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 07-345-JJF |
| | ) | |
| *v.* | ) | |
| | ) | |
| B.A. CAPITAL CO. LP, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

## APPELLANT'S CONSOLIDATED REPLY BRIEF

| | |
|---|---|
| HANIFY & KING, PC | CROSS & SIMON, LLC |
| Charles R. Bennett, Jr. | Amy Evans (No. 3829) |
| One Beacon St., 21st Floor | 913 N. Market St., 11th Floor |
| Boston, MA  02108 | P.O. Box 1380 |
| (617) 423-0400 | Wilmington, DE 19899-1380 |
| | (302) 777-4200 |
| Dated:  March 27, 2008 | (302) 777-4224 (facsimile) |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   Section 546(e) of the Bankruptcy Code Does Not Include Private Sales ................ 2

II.  Intent to Defraud is Not Required for this Court to Collapse Each of the
     Two Transactions for Purposes of Fraudulent Transfer Law ................................. 6

     A. Collapsing is Appropriate for Claims of Constructive Fraud ........................... 8

     B. The Trustee's Complaint Amply Provides Factual Support for Collapsing
        the Two LBOs at this Stage of the Litigation .................................................. 10

III. The Trustee has Named the Proper Debtor ............................................................ 11

IV.  Plassein's Insolvency Cannot Be Properly Determined on a Motion
     to Dismiss ................................................................................................................ 12

CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Adelphia Communications Corp.* v. *Bank of America*
 (In re *Adelphia Communications Corp.)*
 365 B.R. 24 (Bankr. S.D.N.Y. 2007) ...........................................................................13

*Bell Atlantic Corp.* v. *Twombly*
   __ U.S.__, 127 S. Ct. 1955 (2007) .............................................................................10

*Brothers Gourmet Coffees, Inc.* v. *Armenia Coffee Corporation*
 (In re *Brothers Gourmet Coffees, Inc.),*
 271 B.R. 456 (Bankr. D. Del. 2002) ............................................................................13

*Government of Virgin Islands* v. *Berry*
  604 F.2d 221(3d Cir. 1979) .....................................................................................4, 5

*HBE Leasing Corp.* v. *Frank*
  48 F.3d 623 (2d Cir. 1995) ...........................................................................................8

*Lowenschuss* v. *Resorts Int'l, Inc.* (In re *Resorts Int'l, Inc.*),
  181 F.3d 505 (3d Cir.), *cert. denied sub nom.Sun Int'l North
  America, Inc. v. Lowenschuss*, 528 U.S. 1021 (1999) ) ...................................................5

*O'Connell* v. *Shallo* (In re *Die Fliedermaus LLC)*
  323 B. R. 101(Bankr. S.D.N.Y. 2005) ........................................................................13

*Official Comm. of Unsec. Creditors* v. *Fleet Retail Fin. Group*
  (In re *Hechinger Inv. Co. of Del.*), 274 B.R. 71 (D. Del. 2002) ................................8, 9

*Official Comm. of Unsec. Creditors of Norstan Apparel Shops, Inc.*, v. *Lattman*
   (In re *Norstan Apparel Shops, Inc.*), 367 B.R. 68 (Bankr. E.D.N.Y. 2007) ....................3

*Pension Benefit Guaranty Corp. v. White Consol. Indus.*,
  998 F.2d 1192 (3rd Cir. 1993) ....................................................................................12

*Phillips* v. *County of Allegheny*
  515 F. 3d 224 (3rd Cir. 2008) ...............................................................................10, 11

*Silverman* v. *Actrade Capital, Inc.*
 (In re *Actrade Financial Technologies, Ltd.)*
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ........................................................................14

*United States v. Hodge*,

321 F.3d 429 (3d Cir. 2003) ..........................................................................................4

*United States* v. *Tabor Court Realty Corp.*,
 803 F.2d 1288 (3d Cir. 1986), *cert. denied sub nom, McClellan
 Realty Co. v. U.S*, 483 U.S. 1005 (1987) ...............................................................8, 9

*Voest-Alpine Trading USA Corp.* v. *Vantage Steel Corp.*
 919 F.2d 206 (3d Cir. 1990) ...................................................................................9, 10

## Federal Statutes and Public Laws

11 U.S.C. § 101................................................................................................................2, 13

11 U.S.C. § 101(51A) .............................................................................................................2

11 U.S.C. § 544....................................................................................................................13

11 U.S.C. § 546(e) .....................................................................................................2, 3, 4, 5

11 U.S.C. § 741(8) ........................................................................................................2, 3, 4

## State Statutes

6 Del. Code § 1304 ..............................................................................................................13

6 Del. Code § 1305 ..............................................................................................................13

In response to the Answering Briefs of the appellees[1], William Brandt, as he is the Trustee of the Estates of Plassein International Corp. ("Plassein"[2]), et al. ("Brandt" or the "Trustee"), makes the following consolidated reply[3].

### I.    Section 546(e) of the Bankruptcy Code Does Not Include Private Sales.

The BA Capital Brief, as well as those of several of the other appellees, entirely mischaracterize Brandt's argument by taking the position his sole basis for asserting that § 546(e)[4] applies only to transactions that implicate the clearance and settlement system for publicly-traded securities is based on legislative history and policy alone. To the contrary, the Trustee's argument is that § 546(e)'s reference to "settlement payment" as defined by § 741(8) is, by its plain language, limited to transactions involving publicly-traded securities.

Section 741(8)[5] defines "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly

---

[1] Answering briefs were filed by the following appellees, Answering Brief of Sam Chebeir [Docket No. 17] ("Chebeir Brief"); Answering Brief of Appellees Charles J. Warr, Paul d. Gage, Stephen S. Willson, G. Kenneth Pope, Jr., Kenneth Olender, and Daniel A. Jones III [Docket No. 16] ("Rex Brief"); Memorandum of Law of the Marshall Plastic Film Defendants in Reply to the Opening Brief of the Appellant [Docket No. 18] ("Marshall Brief"); Answering Brief of Appellees Key Packaging Shareholders [ ] ("Key Brief," "Key Appellees"); Appellee B.A. Capital Company LP's Opposition Brief [Docket No. 19] ("BA Capital Brief") (collectively, "Appellees' Briefs").

[2] Both the Bankruptcy Court and the Appellees raise an issue as to whether Plassein International Corp. is the same entity as Plassein Packaging Corp., the entity named in association with various financial transactions underlying this Complaint. As discussed in Section III, *infra*, they are one and the same, and, except in that section, will be referred to as "Plassein."

[3] The Trustee incorporates by reference his Opening Brief [Docket No. 8] herein.

[4] Throughout this reply brief statutes identified only by section number ("§__") are from the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise noted.

[5] The definition of "settlement payment" that appears in § 101 applies only to the "forward contract" trade, and therefore has no relevance here. *See* 11 U.S.C. § 101(51A).

2

used in the securities trade." The final clause of § 741(8) – "commonly used in the securities trade" – is the key to this case. As one court has held, "[t]he 'securities trade' in this statutory context plainly means the public securities markets." *Official Comm. of Unsec. Creditors of Norstan Apparel Shops, Inc.*, v. *Lattman* (In re *Norstan Apparel Shops, Inc.*), 367 B.R. 68, 76 (Bankr. E.D.N.Y. 2007).

While the Key Brief attempts to undermine the Trustee's analysis of the language of §546(e), it is unsuccessful. In the first instance, Key argues that §546(e) does not expressly distinguish between public and private securities. Simply put, such a distinction would be at best redundant, because §546(e) expressly incorporates §741(8), and §741(8) does make the distinction by referring to the system for settling sales of publicly-traded securities, as the Trustee has set forth in detail at Section I(A) of his Opening Brief.

Second, the Key Brief insists that the word "trade" includes private as well as public sales. Key Brief at 15-16. Of course, but the key term of § 741(8) is "the *securities* trade," not "trade" alone and out of context (emphasis supplied). And the Trustee has shown "the securities trade" is best read to refer to public markets. *Id.*

Third, the Key Brief argues that "securities markets" extend beyond publicly-traded stocks, pointing to a reference in the Trustee's source, Munn et al., *Encyclopedia of Banking & Finance* 936 (9th ed. 1991), which in its lengthy description of "Securities Markets" includes a reference to the existence of "private placements." However, the Key defendants would have this exception, to the extent it is an exception, swallow the rule. It should not. Private placements are placements of usually private securities (although sometimes public securities) to a small number of certain accredited private

3

buyers, which are subject to Regulation D promulgated pursuant to the Securities Act of 1933. *See,* 17 C.F.R. §230.501 *et seq.* Notably, the Key defendants do not argue that the LBO consisted of the private placement of their shares with Plassein.

Fourth, the Key Brief claims that, even accepting the Trustee's reading of "securities trade" in § 741 (8), any sort of payment that is "commonly used" in the securities trade is exempted by § 546(e), even if the particular payment at issue occurred outside of the securities trade (i.e., it occurred in a private transaction). In other words, the Key Defendants take the position that because wire transfers are "commonly used" in transferring publicly-traded shares, they fall within §741(8) even for a private transaction. The Key Brief advocates that because wire transfers are "commonly used" in transferring securities, *any* wire transfer is included in § 741(8) -- presumably even one that does not involve securities at all, much less publicly-traded securities. This logic turns the statute on its head, expanding §546(e) far beyond the limit that any court has gone in interpreting that section of the statute to date.

To the contrary, the point of § 741(8)'s final phrase, "or other similar payment commonly used in the securities trade," is simultaneously to recognize that the list of specific types of payments in § 741(8) is not an exclusive list, as long as the payment under consideration is "similar" and "common," but also to *require* that the payment was made in "the securities trade," i.e. with respect to publicly-traded securities. Key's reading would remove that limitation and thus would enormously expand the universe of payments subject to avoidance under § 546(e). Surely this reading cannot be correct. *United States* v. *Hodge,* 321 F.3d 429, 437 (3d Cir. 2003) (where the Third Circuit stated that it "will not read a statute to produce absurd or unintended results . . ."); *Government*

4

*of Virgin Islands v. Berry,* 604 F.2d 221, 225 (3rd Cir. 1979) (" 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence.' " (quoting *United States v. Kirby,* 74 U.S. (7 Wall.) 482, 486, 19 L.Ed. 278 (1868))).

Finally, the Key Brief claims that the legislative history of § 546(e) does not support the Trustee's reading of the statute -- namely that it applies only to sales of publicly-traded securities. The Key Appellees arrive at this conclusion because, they say, the legislative history of § 546(e) does not unequivocally *exclude* consideration of privately-held stocks. The notion that Congress would expressly discuss all of the transactions that the legislation intended to exclude is ridiculous. Congress did not talk about transactions in privately-held stocks in its discussion of § 546(e) because there was no conceivable reason to do so -- the plain language of the statute excludes them. The suggestion that Congress might have had some secret, unstated reason to include private transactions in §546(e) is entirely unsupported and unsupportable.

Importantly, not one of the appellees propose any reason that §546(e) *should* apply to transactions like the one before this Court -- they merely state that under *Lowenschuss* v. *Resorts Int'l, Inc.* (In re *Resorts Int'l, Inc.*), 181 F.3d 505 (3d Cir.), *cert. denied sub nom., Sun Int'l North America, Inc. v. Lowenschuss*, 528 U.S. 1021 (1999) it must. However, as the Trustee has set out in his Opening Brief (Section I(C)), the *Resorts* court simply did not have before it a case involving privately-held stock, and therefore anything it might have said that implicated facts not before it is merely *dictum* and not binding on the Trustee.

5

## II. Intent to Defraud is Not Required for this Court to Collapse Each of the Two Transactions for Purposes of Fraudulent Transfer Law.

In the first instance, since the appellees insist on muddling the Trustee's claims, a review of the fraudulent transfers alleged in his complaint is appropriate. There were two transactions by which Plassein International acquired companies involved in the plastic film trade. Plassein's acquisition of the stock of four of the debtor companies on January 10, 2000 (Transamerica Plastic LLC/Plastically Industries, Inc. ("Plastically"; Nor Baker Industries Limited ("Nor Baker"), Marshall Plastics Film, Inc. ("Marshall"), and Key Packaging Industries Corp. ("Key")) is known as the "January Acquisition." Complaint at ¶¶ 27-31 (See Appendix, A0025-0158). Plassein's stock acquisition of another plastics company, Rex International Inc. ("Rex"), closed on August 15, 2000, and is known as the "Rex Acquisition." Complaint at ¶ 48 & ¶ 52.

The January Acquisition followed the same or similar format for acquisition of each Transamerica, Key, Plastical and Nor Baker[6]. Plassein *and* each respective acquired company entered into stock purchase agreements with the respective shareholders, Complaint at ¶¶27-31; Affidavit of Charles R. Bennett, Jr. in Support of the Trustee's Opposition to the Defendants' Motion to Dismiss ("Bennett Aff.," Appendix at A0260-A0328) at ¶¶ 2-4 and exhibits attached thereto, which indicated that the individual acquisition was part of a greater scheme: "The Purchaser [Plassein] has entered into agreements or letters of intent with respect to the acquisition, by stock purchase or asset purchase, of companies engaged in the Business, including the Company," Bennett Aff. at Exhibit A, p. 6. Plassein *and* each acquired company then entered into a Loan and

---

[6] Nor Baker is not a participant in the Trustee's lawsuit as it is subject to a liquidation proceeding in Canada.

6

Security Agreement with their lenders to finance the acquisitions. Complaint at ¶ 34; Bennett Aff. at ¶¶ 7-9 and exhibits. All of the acquired companies, in addition to becoming co-obligors on the loan of approximately $53 million, pledged all of their assets as security for the entire loan. The security for the loan of approximately $53 million was all of the assets of the four companies acquired. *Id.* Despite that the January Acquisition companies were obligated on the loan and co-borrowers, the funding from the loan was never retained by the companies, but in large measure flowed through to their respective shareholders. Complaint at ¶ 40. Thus, as a result of this LBO, which transpired all on the same date (January 10, 2000), the acquired companies received nothing but substantial additional debt, while the shareholders were paid handsomely for their stock, which went to Plassein. Complaint at ¶¶ 44-45. As the Trustee has alleged, the resulting mountain of debt from this LBO either rendered the debtor companies insolvent or left them with insufficient capital to pay operating expenses as well as debt service. Complaint at ¶¶ 46-47, and Counts I-IV.

Plassein repeated this format in the Rex Acquisition, acquiring Rex's stock through amended loan agreements with its lender, allowing increased borrowing of nearly $20 million, as well as new subordinated debt of $36.5 million, as well as equity investment. Complaint at ¶¶ 48-51. Rex as well as the companies acquired in January became jointly and severally liable for the new loans, which were secured by the assets of all. *Id.* at ¶ 49. The new funding passed through Rex to its shareholders in an amount in excess of $31 million and the stock went to Plassein. *Id.* at ¶53. Rex, like the companies acquired in January, received little if any of the loan proceeds from the LBO and certain nothing from the shareholders in return for an enormous increase in its debt burden,

7

which rendered them insolvent or with unreasonably small capital with which to pay operating and debt expenses. *Id.* at ¶¶ 58-61.

Simply put, the individual companies acquired by Plassein in 2000, which are the debtors for purposes of the Trustees' claims, paid and paid dearly for Plassein to acquire stock and for their shareholders to receive a premium purchase price, while the debtors were saddled with nothing but debilitating debt. The near simultaneous transactions by which Plassein and the defendant shareholders accomplished each of the January and Rex Acquisitions, are exactly the type of circuitous schemes recognized by this Circuit as single transfers for analysis as fraudulent conveyances. *United States* v. *Tabor Court Realty Corp.*, 803 F.2d 1288, 1302-1303 (3d Cir. 1986), *cert. denied sub nom. McClellan Realty Co. v. U.S.*, 483 U.S. 1005 (1987) ("We are satisfied with the district court's conclusion that the funds 'merely passed through the borrowers to [the acquiring company].' This necessitates our agreement with the district court's conclusion that, for purposes of determining ITT's knowledge of the use of the proceeds under [the UFCA], there was one integral transaction").

A. <u>Collapsing is Appropriate for Claims of Constructive Fraud</u>.

The Trustee has urged this Court, as it did the Bankruptcy Court, to view the *in seriatum* steps of each of the two acquisitions by Plassein in 2000 to be two complete wholes, which has been accepted and labeled "collapsing" or "telescoping" the LBO by the numerous courts and cases that have endorsed doing so. *See ,e.g., United States* v. *Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir. 1986), *cert. denied sub nom. McClellan Realty Co. v. U.S.*, 483 U.S. 1005 (1987); *Official Comm. of Unsec. Creditors* v. *Fleet Retail Fin. Group* (In re *Hechinger Inv. Co. of Del.*), 274 B.R. 71, 90-91(D. Del. 2002); *HBE Leasing Corp.* v. *Frank,* 48 F.3d 623, 635 (2d Cir. 1995). However, the appellees uniformly argue that a court may only collapse a leveraged buyout ("LBO") for

8

analysis as a fraudulent conveyance when there is evidence of actual fraud, not in a case such as this where the Trustee has alleged violations of the fraudulent conveyance statutes where a debtor's conduct amounts to constructive rather than actual fraud. There is no logic to their position, which unsurprisingly has been expressly rejected by the Third Circuit.

The notion of considering a multi-step transaction as one is well established in this Circuit where one or more transferees were merely "pass-throughs" to the ultimate benefactor of the transaction. See, *Hechinger*, 274 B.R. at 90 ("In *Tabor Court Realty*, the Third Circuit agreed that the district court properly collapsed the steps of an LBO transaction in that case in order to determine fraudulent conveyance liability and stated that the district court 'looked beyond the exchange of funds between [the lender] and the [debtors]' because '[t]he two exchanges were part of one integrated transaction'). More important here, the Third Circuit in *Tabor Court Realty* considered the very same argument promoted by the Appellees, that their good faith motive in participating in the LBO, rather than their knowledge of the framework, should be a defense to fraudulent conveyance. This argument was rejected for the same reason it should be rejected here – imputing motive/intent into any aspect of a claim based on constructive fraud is inconsistent with the Uniform Fraudulent Transfer Act and is therefore unacceptable. The *Tabor Court Realty* Court emphasized that knowledge of the workings of the transaction was enough, regardless of intent. *Id.* at 1296.

That a number of cases require a showing of fraudulent intent by all participants in the LBO is a function of the nature of the fraudulent conveyance pleaded in those cases amounting to actual rather than constructive fraud. See, e.g., *Voest-Alpine Trading USA*

9

*Corp.* v. *Vantage Steel Corp.,* 919 F.2d 206, 212-213 (3d Cir. 1990). There, the plaintiff alleged both actual and constructive fraudulent conveyances, and actual fraudulent intent was found and affirmed. However, the Third Circuit made plain that it would have telescoped the multiple stages of the *Voest-Alpine* conveyance at issue even if constructive fraud was the only theory available to avoid the transfer. *Id.* at 214-215 ("Thus, even if no finding of 'actual intent' . . . had been found, the fraudulent nature of the conveyance in question would still be beyond dispute . . . This legal conclusion emerges from the district court's findings that they Stablers had arranged a series of transactions that rendered Paige insolvent through foreclosure . . . .while conveying Paige's assets . . . without fair consideration").

> B. The Trustee's Complaint Amply Provides Factual Support for Collapsing the Two LBOs at this Stage of the Litigation.

The case law makes clear, then, that a court may collapse the stages of an LBO to determine whether a constructively fraudulent conveyance has occurred when the participants had knowledge of the larger transaction, regardless of an actual intent to defraud. The Trustee has fairly met and exceeded the standard of pleading required by 12(b)(6), even after the Supreme Court's recent pronouncements in *Bell Atlantic Corp.* v. *Twombly*, ___ U.S.___,  127 S. Ct. 1955 (2007), which remains "if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to  . . . relief, the motion to dismiss should not have been granted." *Twombly,* 127 S. Ct. at 1969 n.8.  Furthermore, the *Twombly* court expressly emphasized that its decision "does not impose a probability requirement at the pleading stage" but rather "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of " the elements of his or her claims.  *Phillips v. County*

10

*of Allegheny,* 515 F. 3d 224, 234-35 (3rd Cir. 2008) (after an analysis of *Twombly's* effect on Rule 8 standards of pleading, concluded a plaintiff's requirement as follows, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation").

Here, the Trustee has articulated his claims with more than the requisite factual detail, leaving the shareholder defendants with no doubt as to the claims levied against them. The Trustee has identified the key documents, demonstrated the shareholders' participation in the LBO and given sufficient evidence in the form of the Stockholder Agreements and Funds Flow Memoranda for each of the two transactions to sustain claims against the shareholders given their knowing participation in the LBOs and allow the case to move forward. To require more of the Trustee in his pleading, as the appellees urge, is not supported even under the tightened pleading mandates of *Twombly*. *Phillips,* 515 F.3d at 237 (admonishing the trial court for an ". . . unduly crabbed reading of the complaint [that] denies [the plaintiff] the inferences to which her complaint is entitled," despite *Twombly*).

**III.    The Trustee has Named the Proper Debtor.**

All of the Appellees' Briefs assert that because the Trustee asserted claims on behalf of debtor Plassein International Corporation ("Plassein International") instead of debtor Plassein Packaging Corporation ("Plassein Packaging"), dismissal of the Trustee's claims was appropriate. The Appellees abandon both common sense and Plassein's bankruptcy petition in furthering this argument.

To confirm that Plassein International and Plassein Packaging are one and the same, this Court need look no further than Plassein International's pleading, Voluntary

11

Petition at Schedule 1, which initiated the underlying bankruptcy action (Appendix at A0001-A0024) lists Plassein Packaging as one of the "Other Names Used by Debtors." As numerous of the Appellees recognized in their Answering Briefs, public record documents, such as this penultimate pleading in the Debtors' underlying consolidated bankruptcy, are properly considered on a motion to dismiss (*e.g.,* BA Capital Brief at p. 13, citing *Pension Benefit Guaranty Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and *matters of public record.*" (emphasis supplied))[7].

### IV.    Plassein's Insolvency Cannot Be Properly Determined on a Motion to Dismiss.

The Key Brief argues to this Court that, even if its other arguments fail, the Court may dismiss the Trustee's complaint because, on its face, their argument goes, Key was not insolvent, and therefore an element of the Trustee's fraudulent conveyance claim cannot be proved. Key's syllogistic argument is unavailing, "as a matter of law, Key Packaging was not rendered insolvent by that transaction, since the sum of its debts was not 'greater than all of the debtor's assets, at a fair valuation' . . . Since insolvency is an essential element of any fraudulent conveyance claim . . . Key Packaging's solvency following the transfer at issue defeats Plaintiff's claim conclusively." While attractive for its simplicity, the Key Appellees self-servingly ignore much of the Delaware Fraudulent Transfer Act, as well as the Trustee's complaint.

---

[7]    Further, BA Capital's argument that the Trustee is raising this public record pleading for the first time on appeal is incorrect. The Affidavit of Charles R. Bennett, Jr. In Support of the Trustee's Opposition to the Defendants' Motion to Dismiss ("Bennett Aff."), Appendix at A0260-A0328, states at ¶11, "According to the Schedules and Statement of Affairs which were filed by Plassein International Corp. in connection with this case before this Court, the Debtor Plassein International Corp. was formerly known as Plassein Packaging Corp.".

The Trustee's complaint relies on §544 of the Bankruptcy Code, as well as 6 Del. § 1304 (declaring a transfer fraudulent if the transferor did not receive reasonably equivalent value and *either* the debtor was "was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" *or* the debtor "intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due") *and* § 1305 (if the debtor made a transfer without receiving equivalent value and "the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation").  Thus the Trustee has pleaded at least three fraudulent conveyance scenarios – that the debtor was left with unreasonably small capital, that the debtor would not be able to pay its debts, or that the debtor was rendered insolvent.

All three of these fraudulent conveyance scenarios require an intensely factual determination as to each debtor's financial condition, or at the least a mixed application of facts and law, and are thus inappropriate for a determination on a motion to dismiss. *Brothers Gourmet Coffees, Inc.* v. *Armenia Coffee Corporation (*In re *Brothers Gourmet Coffees, Inc.),* 271 B.R. 456, 460 (Bankr. D. Del. 2002) ("Whether a company is insolvent under the Bankruptcy Code is considered a mixed question of law and fact"); *O'Connell* v. *Shallo (*In re *Die Fliedermaus LLC),* 323 B. R. 101, 106 (Bankr. S.D.N.Y. 2005) ("Insolvency, however, is a question of fact"); *Adelphia Communications Corp*. v. *Bank of America (*In re *Adelphia Communications Corp.),* 365 B.R. 24, 79 (Bankr. S.D.N.Y. 2007)   (holding that solvency was a factual issue inappropriate for

13

determination on a 12(b)(6) motion); *Silverman* v. *Actrade Capital, Inc. (*In re *Actrade Financial Technologies, Ltd.),* 337 B.R. 791, 803 (Bankr. S.D.N.Y. 2005).

CONCLUSION

For the reasons stated above and in the Appellant's Opening Brief, the Bankruptcy Court's order dismissing the Trustee's Complaint should be *reversed.*

Respectfully submitted,

WILLIAM BRANDT, as he is the Trustee of the Estates of Plassein International Corp., *et al.*

By his attorneys,

　　　/s/Amy Evans　　　
Amy Evans (No. 3829)
CROSS & SIMON, LLC
913 N. Market St., 11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
(302) 777-4200
(302) 777-4224 (facsimile)

and

Charles R. Bennett, Jr.
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400

Dated:  March 27, 2008

14